JOHN A. NICHOLS, Respondent, v. THE SCRANTON STEEL COMPANY, Appellant.

Where by the terms of a contract of sale the property is to be delivered in specified portions, from time to time, the purchaser to give his notes for each portion delivered, and before completion of the contract he refuses to give notes demandable for deliveries made and also refuses to give notes for future deliveries, or to be further bound by the terms of the contract, this constitutes a breach thereof as a whole and gives a present right of action to recover damages for the breach. The vendor is not required to wait until the expiration of the terms of credit for the goods delivered in order to recover therefor, nor is he required to make further deliveries.

Plaintiff's complaint herein alleged in substance that his assignors, H. & Co., entered into a contract with defendant, by which the former agreed to sell to the latter, 30,000 tons of iron at a specified price per ton, the iron to be delivered in specified portions monthly, the delivery of each month to be paid for on the twenty-seventh of the next month; that after a portion of the iron had been delivered defendant repudiated the contract. Defendant's answer set up a modification of the contract, in effect suspending deliveries for two months and reducing the monthly deliveries thereafter, plaintiff also agreeing to accept on account a reduced price, and to receive four months paper therefor subject to one renewal, "the question of what abatement, if any, from market price" to be settled by the parties, and if they fail to agree to be left to the decision of an arbitrator named, to whom power was given "to decide according to what he thinks just and equitable." On the trial plaintiff offered evidence showing deliveries of iron at the rates mentioned in the modification, the receipt of notes as specified for deliveries made up to a certain time, a submission to the arbitrator named and an award by him that nothing should be deducted from the original contract price. This was objected to as inadmissible under the complaint. The referee admitted the evidence and allowed the complaint to be amended to conform to the proof upon statements made by defendant's counsel that he was not surprised by the offer and did not desire further time, in case the evidence was received and the amendment allowed. *Held*, no error; that the amendment was not the introduction of a new and different cause of action.

The amended complaint alleged and the referee found that the term "market price" in the modification was inserted by mutual mistake instead of "contract price" as agreed, and that thereafter by consent of the parties the agreement was corrected so as to read as intended. *Held*, that the amended complaint did not ask for, nor did the referee grant a reformation of the contract, and so there was

no exercise of the equity powers of the court; but that the action remained an action at law, the referee simply taking the contract as the parties themselves had reformed it; and so that these averments in the amended complaint did not constitute an amendment prohibited by the Code of Civil Procedure (§ 723), *i. e.*, an amendment substantially changing the cause of action.

It appeared that the consent on the part of defendant to change the term in the modification from "market" to "contract" price was made by its president. It further appeared that all the negotiations between the parties which resulted in the two contracts were had with that officer ; that he was defendant's managing and controlling agent and as its manager and representative was present at the arbitration, and attention having then been called to the mistake consented to the change.   Defendant claimed that the president had not power to bind defendant by his consent to the alteration.   *Held*, untenable.

After the award was made and a copy served on defendant it refused to give notes for the deliveries of the previous month or for future deliveries unless the vendor would make some reasonable settlement and refused to abide by the award.   *Held*, that this was in effect a refusal to abide by the terms of the contract; that H. & Co. had the right thereupon to regard the contract as repudiated by defendant and were absolved from any obligation to tender deliveries of the balance of the iron, and were entitled to bring suit immediately to recover damages for breach of the contract.

(Argued March 9, 1893; decided March 21, 1893.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made April 19, 1892, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward C. James* and *Hamilton Wallis* for appellant. The referee had no power to amend the complaint as he did upon the trial.   (Code Civ. Pro. § 723 ; *Verplank* v. *M. Ins. Co.*, 1 Ed. Ch. 52; *Harris* v. *K. Ins. Co.*, 5 Wend. 654; *Whitmarsh* v. *Campbell*, 2 Paige Ch. 67 ; *Harris* v. *Tumbridge*, 83 N. Y. 97 ; *Reader* v. *Sayre*, 70 id. 190 ; *Button* v. *S. Line*, 40 Hun, 424 ; *Coddington* v. *Mott*, 1 McC. 434 ; *Bush* v. *Tilly*, 49 Barb. 604 ; *Ford* v. *Ford*, 53 id. 528 ; *Whitcomb* v. *Hungerford*, 42 id. 185 ; *Bulen* v. *Burdell*, 11

Abb. Pr. 383; *Platt* v. *Squire*, 15 Cush. 557; *Cocks* v. *Radford*, 13 Abb. Pr. 210.) The plaintiff failed to make out any case under the original pleadings. (*Burt* v. *Saxton*, 1 Hun, 553; *Mead* v. *De Golyar*, 16 Wend. 632; *Page* v. *Ott*, 5 Den. 406; *Clark* v. *Dales*, 20 Barb. 42; *Vanbuskirk* v. *Stowe*, 42 id. 9; *Homer* v. *I. Co.*, 67 N. Y. 478; *Chemical* v. *Matthews*, 76 id. 145; *Avery* v. *Wilson*, 81 id. 341; *McCreary* v. *Day*, 119 id. 1; *Avery* v. *E. L. A. Co.*, 117 id. 451; *Mead* v. *Ins. Co.*, 64 id. 453; *Brice* v. *Ins. Co.*, 55 id. 240; *Moran* v. *McLarty*, 75 id. 25; *Paine* v. *Jones*, Id. 593; *Ford* v. *Joyce*, 78 id. 618; *March* v. *McNair*, 48 Hun, 117; *Williams* v. *Thorp*, 8 Cow. 202; *Marion* v. *Richmond*, 3 Den. 58.) No subsequent contract or modification of the July contract was made between the parties. (*Bartlett* v. *Weyman*, 14 Johns. 250; *Seybolt* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 562; *Vanderbilt* v. *Schreyer*, 91 id. 392; *Alexander* v. *Cauldwell*, 83 id. 485; *W. R. R. Co.* v. *Bayne*, 11 Hun, 166; 75 N. Y. 1; *P. Bank* v. *S. A. R. C. Church*, 109 id. 12; *Titus* v. *C. & F. R. R. Co.*, 8 Vroom. 98; *Stokes* v. *N. J. P. Co.*, 46 N. J. L. 237.) The plaintiff was in no position to enforce this contract, being himself in default. (*M. Co.* v. *Naylor*, 9 App. Cas. 434; *Norrington* v. *Wright*, 115 U. S. 210; *Winchester* v. *Newton*, 2 Allen, 495; *Bogardus* v. *N. Y. L. Ins. Co.*, 101 N. Y. 335.) The action was prematurely brought. (*Bogardus* v. *N. Y. L. Ins. Co.*, 101 N. Y. 335; *Mersey Co.* v. *Naylor*, 9 App. Cas. 439; *Winchester* v. *Newton*, 2 Allen, 492; *Learned* v. *Tillotson*, 97 N. Y. 12.) The proceedings before the arbitrator upon the arbitration were erroneously admitted in evidence. (*Sheridan* v. *Smith*, 3 Hill, 538; *Seck* v. *Valentine*, 94 N. Y. 569; *Learned* v. *Tillotson*, 97 id. 1; *Talcott* v. *Harris*, 93 id. 567.) Evidence was erroneously admitted as to negotiations and conversations between Hart and Scranton prior to the execution of the contract of July 1, 1890. (*Mumford* v. *McPherson*, 1 Johns. 444; *Green* v. *Collins*, 86 N. Y. 254; *Eighmie* v. *Taylor*, 98 id. 298; *Corse* v. *Peck*, 102 id. 513; *Clark* v. *Post*, 113

id. 17.) An offer to buy peace on the eve of a controversy, where the offer contains no admission of a fact, but is a naked proposition to pay in settlement of a disputed claim, cannot be introduced in evidence against the person making such an offer. (*Green* v. *H. R. R. R. Co.*, 32 Barb. 34; *Williams* v. *Thorp*, 8 Cow. 202; *Marvin* v. *Richmond*, 3 Den. 58 : *Payne* v. *F. S. S. R. R. Co.*, 8 J. & S. 141.)

*Henry P. Starbuck* for respondent. None of the referee's findings of fact are reviewable in this court. (*Patterson* v. *Robinson*, 116 N. Y. 193; *Potter* v. *Carpenter*, 71 id. 74; *Stilwell* v. *M. L. Ins. Co.*, 72 id. 385, 388; *Kearney* v. *Mayor, etc.*, 92 id. 617, 620; *Rutherford* v. *Schattman*, 119 id. 604, 605; *Elwood* v. *W. U. T. Co.*, 45 id. 549; *Kavanaugh* v. *Wilson*, 70 id. 177; *Sipple* v. *State*, 99 id. 284, 289; *C. N. Bank* v. *Diefendorf*, 123 id. 191, 200.) Whether the effect of the decision of Mr. Bullitt was to terminate the agreement of July 1, 1890, and restore the parties at once to their original rights and liabilities under the contract of December 20, 1889, or to leave the agreement of July 1, 1890, in full force, merely determining in advance upon what basis final settlements should be made when that agreement should be finally terminated by full performance according to its terms, in either case, the defendant's repudiation of that decision and refusal to perform any more of its obligations until the plaintiff's assignor should consent to forego some of his legal rights, gave the plaintiff's assignor an immediate right of action for the full value of the original or modified contract, as the case may be, the two values being, in this case and under the decision of Mr. Bullitt, identical. (*Hochster* v. *De La Tour*, 2 E. & B. 678; *Howard* v. *Daly*, 61 N. Y. 362, 374; *Burtis* v. *Thompson*, 42 id. 246, 250; *Freer* v. *Denton*, 61 id. 492, 496; *Shaw* v. *R. L. Ins. Co.*, 69 id. 286, 292; *Willis* v. *Simmonds*, 8 Hun, 189, 202, 203, 204; *Ferris* v. *Spooner*, 102 N. Y. 10; *Windmuller* v. *Pope*, 107 id. 674; *Lee* v. *Becker*, 6 Abb. [N. S.] 392; *Taylor* v. *Bradley*, 39 N. Y. 129, 144; *Graf* v. *Cunningham*, 109 id. 369; *Mat-*

*thews* v. *Matthews*, 16 N. Y. Supp. 621; *Canda* v. *Wick*,
100 N. Y. 127.) The testimony showing that the words
"market price" in that part of the agreement of July 1, 1890,
which states the question to be decided by Mr. Bullitt, were
inserted by mistake of all the parties, for the words "contract
price" was properly admitted under the pleadings as they
stood before the amendment of the complaint, and in any
event did not harm the defendant. (Code Civ. Pro. § 522;
*Dambman* v. *Schulting*, 4 Hun, 50; *Mandeville* v. *Reynolds*,
5 id. 338; 68 N. Y. 528, 542; *Verplanck* v. *Van Buren*,
76 id. 247, 259; *Keeler* v. *Keeler*, 102 id. 30, 35, 36; *Meyer*
v. *Lathrop*, 73 id. 315, 321, 322; *Arthur* v. *H. F. Ins. Co.*,
78 id. 462, 466; *Grattan* v. *M. L. Ins. Co.*, 80 id. 281, 294;
*M. L. Ins. Co.* v. *Meeker*, 85 id. 614, 615; *Argall* v. *Jacobs*,
87 id. 110, 113, 114; 2 Pom. Eq. Juris. [2d ed.] §§ 858, 859,
862; 1 Greenl. on Ev. § 290; *Ward* v. *Kilpatrick*, 25 N. Y.
413; *Thrasher* v. *Bentley*, 1 Abb. [N. C.] 39, 46; 49 N. Y.
649; *Romeyn* v. *Sickles*, 108 id. 650, 653.) The testimony in
question would have been properly admitted in support of the
original complaint, even if the agreement of July 1, 1890, had
not been affirmatively pleaded but had been put in evidence
under a denial. (Code Civ. Pro. § 500; *McKyring* v. *Bull*,
16 N. Y. 297, 299, 303; *Weaver* v. *Barden*, 49 id. 286, 297,
298; *Milbank* v. *Jones*, 127 id. 370, 376; Pom. on Rem.
[2d ed.] §§ 666, 673; *Wheeler* v. *Billings*, 38 N. Y. 263, 264;
*Greenfield* v. *M. M. L. Ins. Co.*, 47 id. 430, 437; *O'Brien* v.
*McCann*, 58 id. 373, 376; *Marsh* v. *Dodge*, 66 id. 533; *Wallace* v. *Blake*, 128 id. 676; *Verplanck* v. *Van Buren*, 76 id.
247; *Mandeville* v. *Reynolds*, 68 id. 528, 544; *Meyer* v.
*Lathrop*, 73 id. 315, 322; *Arthur* v. *H. F. Ins. Co.*, 78 id.
462, 467; *Grattan* v. *M. L. Ins. Co.*, 80 id. 281, 294;
*Phillips* v. *Gorham*, 17 id. 270; *Davis* v. *Morris*, 36 id. 569;
*Williams* v. *Slote*, 70 id. 601; *Benedict* v. *Benedict*, 85 id.
625; *Maher* v. *H. Ins. Co.*, 67 id. 283; Code Civ. Pro.
§ 522; *Meyer* v. *Lathrop*, 73 N. Y. 315, 322; *Arthur* v.
*H. F. Ins. Co.*, 78 id. 462, 467; *Grattan* v. *M. L. Ins.
Co.*, 80 id. 281, 294; *Van Nest* v. *Talmage*, 17 Abb. 99,

105, 106; *Wigand* v. *Sichel*, 3 Keyes, 120, 122; *Williams* v. *Tilt*, 36 N. Y. 319, 323; *Claflen* v. *Taussig*, 7 Hun, 223, 225; *Cohen* v. *C. L. Ins. Co.*, 60 N. Y. 300, 304, 305; *Willson* v. *Force*, 6 Johns. 110; *Hunter* v. *H. R. R. I. & M. Co.*, 20 Barb. 493, 501; *Blin* v. *Cottle*, 32 id. 322, 323.) The admission of the testimony did not harm the defendant. (*Ward* v. *Kilpatrick*, 85 N. Y. 413; *C. Bank of Brooklyn* v. *Dearborn*, 20 id. 244, 246; *Forrest* v. *Forrest*, 25 id. 501, 510; *People* v. *Gonzalez*, 35 id. 49, 59, 60; *Milliner* v. *Lucas*, 3 Hun, 496, 498; *Phelps* v. *People*, 72 N. Y. 365, 373; *Tenney* v. *Berger*, 93 id. 524, 531; *McGean* v. *M. R. Co.*, 117 id. 219, 224.) The evidence showing the proceedings had before Mr. Bullitt and showing his award thereupon as arbitrator under the agreement of July 1, 1890, was properly admitted under the pleadings as they stood before the amendment of the complaint. (*Briggs* v. *Waldron*, 83 N. Y. 582; *Brazill* v. *Isham*, 12 id. 9; *McKyning* v. *Bull*, 16 id. 297; *Young* v. *Rummell*, 2 Hill, 478; *Johnson* v. *White*, 6 Hun, 587.) The complaint was properly amended at the trial so as to allege the agreement of July 1, 1890, the mistake therein, the correction thereof, the arbitration pursuant thereto and the repudiation of the award. (*Bate* v. *Graham*, 11 N. Y. 237, 242; *Haddow* v. *Lundy*, 59 id. 320, 328; *Cohn* v. *Husson*, 113 id. 662; Code Civ. Pro. § 723; *Reeder* v. *Sayre*, 70 N. Y. 180; *Lattin* v. *McCarty*, 41 id. 107; *Maher* v. *H. Ins. Co.*, 67 id. 283; *Barnes* v. *H. F. Ins. Co.*, 75 Iowa, 11; *Esch* v. *H. Ins. Co.*, 78 id. 334; *Chapin* v. *Dobson*, Id. 74; *Hunter* v. *H. R. I. & M. Co.*, 20 Barb. 493, 502; *Avery* v. *N. Y. C. & H. R. R. R. Co.*, 108 N. Y. 142, 150; *Wilcox* v. *Payne*, 28 N. Y. S. R. 712; *Fallon* v. *Lawler*, 102 N. Y. 228; *Hosley* v. *Black*, 28 id. 438; *Grattan* v. *M. L. Ins. Co.*, 80 id. 281.) The two causes of action for the price of the delivered iron and for damages for breach of the unexecuted part of the contract, although they might have been separately stated, were properly united in the same complaint. (*Perry* v. *Dickerson*, 85 N. Y. 345, 349, 350.) The sayings and doings of the defendant's president subsequent to the agree-

ment of July 1, 1890, were admissible as admissions on the part of defendant. (*Cudd* v. *Jones*, 63 Hun, 142.)

Peckham, J.   This action was brought to recover damages said to have been sustained by the assignor of the plaintiff by reason of a refusal of the defendant to be further bound by the terms of a contract for the sale of thirty thousand tons of pig iron to it, and which it repudiated after a large amount of the iron contracted for had been delivered.   The contract price was $23.50 per gross ton and the market price had dropped since the execution of the contract to $18 per ton. The plaintiff demanded over a hundred thousand dollars damages.   The contract was in writing and was entered into December, 1889.   It was as follows :

" Philada., *Dec.* 20th, 1889.

" Sold to the Scranton Steel Co., for Account of Messrs. Wm. R. Hart & Co.:

" Thirty thousand (30,000) tons of Bessemer pig iron, to be run of furnace as nearly as possible equal quantities Numbers 1, 2 and 3.   For delivery, 1,000 tons in January, 2,000 tons in February, 2,000 tons in March, and balance in equal monthly proportions during the months of April, May, June, July, August, September and October, A. D. 1890, and deliverable f. o. b. cars purchaser's works, Scranton, Pa., at twenty-three and a half ($23.50) dollars per ton of 2,240 lbs. Settlements to be made in cash on the twenty-seventh (27) of each month for the previous month's shipment.    The above-named iron to contain not over .10 phosphorus and to be in other respects suitable for the Bessemer process.

" (Signed)         CHARLES W. MATTHEWS,
" *Broker.*

"Accepted by the Scranton Steel Co.,
" W. W. Scranton,
" *President.*"

The defendant in its answer set up the fact of a modification of the above contract.   It alleged full performance and

denied repudiation on its part. The modification was set forth at length in defendant's answer and it is as follows:

"NEW YORK, *July* 1, 1890.

"Memorandum of understanding between Crane Iron Co. & W. R. Hart and Co., of the first part, and Scranton Steel Co., of the second part.

"FIRST. At request of Scranton, Crane and Hart will suspend shipments for the next two months, with the exception of about 1500 tons per month by Hart from Parryville.

"SECOND. Scranton will give 30 and 60 days paper for amounts now due, but will anticipate if possible.

"THIRD. Crane and Hart will resume shipments, but making monthly deliveries as light as possible, and if necessary not exceeding one-half of amounts specified in contracts, and settlements will be made at rate of eighteen dollars per ton, on account, from month to month, unless market price should advance above that figure, and then at current rates, such settlements to be taken on account, and balances due to be adjusted at termination of contract. But Hart & Crane Co. will accept, if desired, 4 mos. paper with privilege of one renewal, and question of what abatement, if any, should be made from market price to be then settled between the parties, and if they fail to agree, to be left to the decision of John C. Bullett, Esq., who shall have power to decide according to what he thinks just and equitable between the parties.

"CRANE IRON CO.,

"SOL. DICKSON, *President.*

"WM. R. HART & CO."

Upon the trial the plaintiff offered evidence, which was received under the objection of the defendant, showing deliveries of iron at the rates mentioned in the modification and the receipt of notes at $18 per ton for all iron delivered up to January, 1891, and also showing the occurrence of the arbitration as provided for in the modified agreement, and the award of the arbitrator that nothing should be deducted from the contract price as mentioned in the original contract. This

evidence was objected to by the defendant as not admissible
under the complaint, which, as defendant alleged, showed the
action was brought entirely upon the original contract of
December, 1889.   The evidence was received by the referee
and he then stated that an amendment of the complaint might
be necessary, and leave was granted to plaintiff to move for an
amendment at a later stage of the trial.   An amendment
conforming the complaint to the proof was subsequently
permitted at the end of the evidence.   It is now claimed that
the referee had no power to grant this amendment.

The record shows that the referee, before permitting the
evidence to be received, which was offered upon this question,
asked the counsel for the defendant if he was surprised by the
offer of testimony or desired time in case the same was
admitted or the complaint amended, and the counsel replied
that he was not surprised and did not ask for time to prepare
for the questions arising under the arbitration.   The July
contract having been set up by the defendant in its answer,
and the defendant being at the time of trial not surprised but
entirely ready to meet the questions arising under this arbitra-
tion, and the evidence in regard thereto and also upon the
whole merits of the case having been fully given by both
sides, it becomes obvious that the defendant has in fact had its
day in court upon all the facts in the case, and the objection
it now makes to the pleading is the purest kind of techni-
cality and should not prevail unless some well settled rule
requires us to give it effect.

We think there is no such rule.

The defendant alleges that the amendment allowed by the
referee introduced an entirely different and new cause of
action and changed the action from what was in the nature of
an action at law into a suit in equity to reform a contract.
This assertion on the part of defendant's counsel requires the
statement of one or two additional facts.

It will be seen that in the modification agreement made
July, 1890, where, towards the end thereof, provision is made
for a determination of what abatement, if any, may be made to

defendant, the term "market price" is used as the price upon which the question of abatement is to be settled.

The complaint, as amended, contained an allegation that this term, "market price," was inserted by mutual mistake instead of the term "contract price," as intended by all parties, and that thereafter, on the 3d of February, 1891, the agreement was duly corrected by the consent of all parties by changing the words "market price" to "contract price." Evidence to support this allegation of mutual mistake and a mutual agreement and consent to rectify it was given on the trial and the fact of such agreement was found by the referee. The counsel for defendant is mistaken in his supposition that the amended complaint contains any prayer to reform the instrument, and the referee does not reform it, but takes the contract as the parties themselves had reformed it and as they admitted it to be. So there was no exercise of the powers of a court of equity to reform an instrument and no application for its exercise was made by the amended complaint. The action remained as it had been, one at law. The simple question then arises whether in proving that the plaintiff's assignor had in all things complied with the terms of the modified contract, and that pursuant to its provisions an arbitration was had at which it was determined that no abatement should be made from the original contract price, the plaintiff was proving an entirely different cause of action from that which was set out in the complaint.

Under the amended complaint the demand for judgment was substantially the same as in the original and based upon the same contract price for the same amount of iron delivered, at the same times, and for which payments had been made in the same amounts. There were, however, certain additional facts set up in the amended complaint the effect of which would show that the July contract set up by defendant as a defense to the suit, did in reality furnish no defense, but permitted the plaintiff to recover according to the provision of the contract of December, 1889. This proves no different and separate cause of action.

It is in truth an amplification of the original complaint and of the cause of action therein set forth, and an allegation of facts which go to show that the plaintiff is entitled by law to recover upon the cause of action first set up. There is no reason why such an amendment should not be permitted, and we think it is not in violation of the Code prohibiting on the trial amendments of a nature to substantially change the cause of action, or defense.

Upon this question of pleading we are of opinion that no ground is presented for a new trial.

A second ground for a reversal is based upon the allegation that there is no sufficient evidence upon which to base the conclusion of the referee that the parties to this contract ever reformed it or consented to the change of the terms thereof from "market" to "contract" price, as already stated, and that without such reformation no cause of action was proved. It is also maintained that if the president of the defendant did consent to this alteration of the contract, he had no power to thus bind the defendant. The evidence in our judgment is ample upon which to base this finding of the referee. It is unnecessary to set it forth or to allude to it in detail. We have read it and we think there is but one proper conclusion to draw from it.

As to the claim that the president had no power to alter the contract, we think the case shows a plain answer.

In the first place he was the officer with whom alone all the negotiations had been had which resulted in the execution of both contracts. The case shows he was in substance the managing and controlling man of the company defendant, and that he was present as the manager and representative of defendant on the occasion of the arbitration, and at which time the mistake was rectified, and he was clothed with all the powers a manager of the business and a representative of the company would be supposed to have. When the attention of the parties was drawn to the language of the contract and when the claim was made that it was a mistake and that in reality no such contract was ever made, the president and

general manager and representative of the defendant acknowl-
edges the fact and consents to the change so that the truth
may be set forth.   This is not making a new contract, nor is
it any modification of an old one.   In truth there had never
been any such contract entered into between the parties and
there was nothing but a consent that the actual contract that
had been entered into should appear by a proper amendment
to the writing which evidenced the contract.   It was a matter
within the knowledge of this officer of defendant, who gave
the consent, as it was he who negotiated and executed the con-
tract itself which was to be reformed, and we have no doubt
that in the light of all these facts he had the power to give
the consent which the referee finds that he did give.

   The defendant sets up as a third ground for a reversal of
the judgment that the plaintiff's assignor was himself in
default upon the contract and hence the plaintiff was in no
position to enforce it or to recover damages for an alleged
default of the defendant.

   It appears in evidence that after the execution of the agree-
ment of July, 1890, the assignor of the plaintiff proceeded with
the delivery of the iron and duly received the notes of the
defendant therefor at the rate of $18 per ton up to the month
of January, 1891.   For that month there were delivered to
the defendant some 640 tons and the defendant was bound
to give its notes at $18 per ton therefor on the 27th of
February.   On the 3d of February, at the procurement of
the defendant, as the referee finds and as the evidence tends
to show, the arbitration provided for in the July agreement
was commenced, although the contract was not then fully
terminated.   Before the arbitration was proceeded with, the
July agreement was by mutual consent of the parties altered
so as to read " contract " instead of " market " price, as already
stated.   On the 10th of February the arbitrator made his
award, in which he refused to grant any abatement to the
defendant from the contract price as contained in the original
contract of December, 1889, for $23.50 per ton.

   In the meantime the plaintiff's assignor was engaged in
making deliveries of the iron for the month of February, and

delivered over seventeen hundred tons during that month. The 27th of February was the day when the notes were to be given by defendant for the January deliveries. A copy of the arbitrator's award had been served upon the defendant before the 27th, and as appears, it was the cause of very great dissatisfaction on the part of the president of the defendant. The notes for the January deliveries of iron were not given and the omission caused instant efforts on the part · of the plaintiff's assignor to discover the reason and to get the notes. While these efforts were on foot and on the 7th and 9th of March, the plaintiff's assignor delivered some 80 tons of iron to defendant and then ceased. There then remained some 4,800 tons of iron to be delivered under the contract in order to fill the amount of 30,000 tons contracted to be sold.

The assignor of the plaintiff having failed to obtain any satisfaction for the neglect of the defendant to send its notes for the January deliveries of iron, employed an agent who on the 4th of March called upon the officers of the defendant at Scranton and asked both the secretary and president why the notes were not sent. The answer of the latter was that there would be no more remittances until Hart & Co., were willing to come to some reasonable settlement. He continued by discussing the award of the arbitrator and said it was entirely out of the question to suppose that he was going to abide by any such decision as that. He said something about what he had lost by the contract and that it was entirely out of the question that he was going to lose so much as would be contemplated in this decision of the arbitrator, and that the company would not trouble itself to give any more notes. Subsequent to that interview and on the 6th of March the plaintiff's assignor wrote a letter to defendant in which he said that failing to receive remittances he would understand defendant as declining to carry out its agreement. Again about the 11th of March he wrote in about the same tenor. In the view taken of this subject we do not lay any stress upon either letter as rendering it necessary for defendant's agents to answer it at the peril of a construction being placed upon their conduct such as the writer chose to state. The defendant contends upon

these facts that the contract in question in this case was divisible in its nature and character and that a refusal to pay or settle for the iron delivered in any one month was not a justification for the other party to refuse to deliver the balance of the iron called for by the contract. And the claim is made that there was nothing proved other than a simple refusal of defendant to pay or settle for the January iron that had already been delivered. Without stopping to inquire as to the correctness of the legal proposition maintained by defendant as to the divisibility of this particular contract and the liability of the vendor to still deliver the iron after a mere refusal to pay or settle for that which had in some previous month been delivered, we are of the opinion that the defendant's counsel is in error in his characterization of the purport and result of the interview between plaintiff's agent and the officers of the defendant. The award of the arbitrator had taken from the defendant all right to any reduction from the contract price of the iron, and the defendant was, therefore, liable, eventually, to pay by reason of such decision, to the plaintiff's assignor the sum of $5.50 on every ton of iron which had already been delivered, and $23.50 on every ton which was thereafter to be delivered. The president of the defendant not only says that the defendant will give no more notes (which language naturally construed would not be limited to a refusal to give notes for the January deliveries only), but at the same time it is plainly, definitely and unambiguously stated that the defendant would not abide by the arbitration and that it was out of the question that it was going to lose by this contract so much as would be contemplated in that decision. The decision of the arbitrator relegated defendant to a liability to be measured by its original contract of December, 1889, not only for all iron already delivered, but for all that was to be delivered in the future, and hence the statement of the president was a plain declaration that the defendant would not abide by a decision which compelled it to live up to the terms of that contract both as to the past and for the future. If this did not amount to a

repudiation of the obligations of the contract, it is difficult to see what would. The defendant absolutely refuses to give any more notes for any purpose until the other parties make some reasonable settlement, that is, until they assent to some curtailment of their legal rights under the contract, and it is a plain and full refusal to abide by the terms of the contract under which the defendant was then held. This, of course, included a refusal to pay the contract price for the iron yet to be delivered, as well as for that already delivered. The assignor of the plaintiff had the right upon such refusal and announcement to regard the contract as repudiated by the defendant and to claim that it was not a mere refusal to give notes for the January deliveries, and under such circumstances there was no necessity to tender the deliveries of the balance of the iron. The defendant's refusal to be further bound by the terms of the contract and the open and plain repudiation thereof by it, would prevent it from insisting that notwithstanding such refusal and repudiation the other parties must still remain held by the contract and that unless they should still continue and go on and make deliveries of iron, they would be in the law considered as in default. The acts of the defendant were such as to justify the referee in his finding that the defendant had refused to be further bound by its contract and that it had repudiated its obligations under it.

Some criticism is made upon the fact that subsequent to the commencement of the action herein, it appears that plaintiff was willing to carry out the contract and deliver to an assignee of the defendant the balance of the iron, amounting to 4,800 tons, for $18 a ton, providing it could be done without prejudice to the claim against the defendant. It is claimed that in some of the letters the contract is treated as still subsisting. We do not think there is anything therein which necessarily changes the position of the plaintiff in this action, and we are of the opinion that under the cases in this court relating to the repudiation of executory contracts, the plaintiff proved sufficient in this case to entitle him to recover some damages for the breach of the contract. (*Burtis* v. *Thompson*, 42 N.

Y. 246; *Howard* v. *Daly*, 61 id. 362, 374; *Freer* v. *Denton*, Id. 492, 496; *Ferris* v. *Spooner*, 102 id. 10; *Windmuller* v. *Pope*, 107 id. 674.)

Another and somewhat similar ground for a reversal is argued by the counsel for defendant, which is that the action was prematurely brought. The defendant's counsel seeks to maintain this proposition by substantially the same argument advanced to support the claim that the plaintiff was in default for a non-delivery of the balance of the iron. He contends here that the plaintiff was bound to deliver the balance of the iron even if the defendant refused to pay for the monthly deliveries, and in any event he urges that no cause of action accrued until subsequent to the month when the last deliveries of the iron under the contracts would have been made.

If a contract of this nature can be repudiated by words and action, we are quite clear the defendant accomplished that result. We have already expressed our views upon substantially this proposition, and need not repeat them.

We do not think the action was prematurely brought.

But assuming the action to have been well brought as to part of the plaintiff's recovery, the defendant still insists that it was error to include therein the moneys for the February and March deliveries of iron, because by the contract payments were not due thereon until March 27th and April 27th, respectively, and then only by notes payable in four months, and the defendant requested a finding that at the time of the commencement of the action nothing was due or payable from it to plaintiff for or on account of the iron delivered in the months of February and March, 1891.

Assuming the contract to have been lived up to by all parties, this request would be correct. And also on that assumption, the deliveries of the 4,800 tons of iron yet remaining undelivered would not have been due, and when delivered according to the terms of the contract, the defendant would not be liable to pay for the iron delivered in any one month until the 27th day of the following month, and then only by giving notes at four months.

We hold, however, that by the repudiation the plaintiff is absolved from the further delivery of iron under the contract, and that an action to recover damages arising from defendant's refusal to receive and pay for such iron may be at once commenced. We do not think the fact that some iron had been delivered, the time for the payment of which had not, by the terms of the contract, arrived when the suit was commenced, makes any difference.

If it were not for a repudiation of the contract nothing could be recovered as damages for the iron not delivered, because by the terms of the contract such delivery and payment would not be due, but when the defendant does repudiate the contract and refuses on its part to fulfill its terms, it cannot be heard to say that the other party must himself be bound by it, and must await the expiration of the term of credit provided for by it before any action can be maintained under it. The plaintiff does not recover the moneys as being the contract price strictly and technically, but as damages for the breach of the contract by the defendant. And those damages would be the present worth of the moneys payable under the contract at the time therein provided. Thus if the moneys were to be due at the end of four months from the time when the iron was, by the terms of the contract, to be delivered, the measure of damages would be, in such case, the present worth of an obligation to pay money due at such a certain time.

It is not intimated that in the bald case of a party bound to pay a promissory note which rests in the hands of the payee, but which is not yet due, such note can be made due by any notice of the maker that he does not intend to pay it when it matures. We decide simply this case where there are material provisions and obligations interdependent. In such case, and where one party is bound, from time to time, as expressed, to deliver part of an aggregate and specified amount of property to another, who is to pay for each parcel delivered at a certain time and in a certain way, a refusal to be further bound by the terms of the contract or to accept further deliveries and a refusal to give the notes already demandable for a portion of

the property that has been delivered, and a refusal to give any more notes at any time or for any purpose in the future, or to pay moneys at any time, which are eventually to be paid under the contract, all this constitutes a breach of the contract as a whole, and gives a present right of action against the party so refusing to recover damages which the other may sustain by reason of this refusal. We refer to the cases above cited as a justification for the rule, and we think the principle decided by them and in the cases therein cited justifies and demands this holding.

The exceptions taken by the defendant to the admission of evidence and argued here have been carefully reviewed, and they constitute, as we think, no reason for a reversal of the judgment.

Upon the whole case we think the judgment is right, and that it should be affirmed, with costs.

All concur.

Judgment affirmed.