DELINA CREAMER, Respondent, v. JOHN MURRAY MITCHELL, Appellant.

GUARANTY OF ROYALTIES — CONSTRUED WITH MAIN CONTRACT. A guaranty of the payment of the "royalty of $30 per week only" secured to an inventor for a term of years by a certain agreement entitling him to a royalty from a licensee that is guaranteed to amount to at least $2,000 per year and to advances of $30 per week on account of said royalty, and by the terms of which he agrees to devote his time and attention to the best of his ability to the business of the licensee as superintendent of construction and salesman, "if requested so to do" by the licensee, though the guaranty also says that it shall run only so long as the license remains uncanceled and the inventor "shall continue as salesman and superintendent of construction * * * and render such services as provided in said contract," binds the guarantor to the payment of all such weekly royalties as may become due under the main contract, and remains in force notwithstanding the inventor's discharge from his position as superintendent and salesman, where the license was not canceled and he continues to be willing to render his services if requested.

Creamer v. Mitchell, 12 App. Div. 350, affirmed.

(Argued March 8, 1900; decided April 17, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered

December 22, 1896, affirming a judgment in favor of plaintiff
entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Carlisle Norwood* for appellant. The defendant's liability
is upon an express condition and his contract is to be strictly
construed. (*E. Nat. Bank* v. *Kaufman,* 93 N. Y. 273;
*Smith* v. *Molleson,* 148 N. Y. 241; *Kingsbury* v. *Westfall,*
61 N. Y. 356; *Ward* v. *Stuhl,* 81 N. Y. 406; *Grant* v.
*Smith,* 46 N. Y. 93; *De Luka* v. *Goodwin,* 142 N. Y. 194;
*J. H. M. L. Ins. Co.* v. *Lowenberg,* 120 N. Y. 44; *Hamilton*
v. *Van Rensselaer,* 43 N. Y. 244; *Bennett* v. *Draper,* 139
N. Y. 266; *Walrath* v. *Thompson,* 6 Hill, 540; *Nat. M. B.
Assn.* v. *Conkling,* 90 N. Y. 116.) The defendant and the
plaintiff's assignor must have had in mind, when the con-
tract of guaranty was made, the possibility that the com-
pany would not request Creamer to serve as salesman or
superintendent. (*Dolan* v. *Rodgers,* 149 N. Y. 489; *Loril-
lard* v. *Clyde,* 142 N. Y. 456; *People* v. *G. M. L. Ins.
Co.,* 91 N. Y. 174; *Bruce* v. *F. N. Bank,* 79 N. Y. 154.)
The plaintiff's assignor was not willing and ready to per-
form after March 30, 1892, as shown by his attitude in the
injunction suits. (*Wharton & Co.* v. *Winch,* 140 N. Y. 287;
*Mayo* v. *Knowlton,* 134 N. Y. 250; *Terry* v. *Munger,* 121
N. Y. 161; *Werner* v. *Tuch,* 127 N. Y. 217.) This judgment
cannot be sustained in the face of the confessed fact that the
express condition upon which the defendant's liability
depended has not been performed, without reading into the
contract between Creamer and the defendant some covenant
or promise on the part of the latter which was not expressed
and cannot fairly be implied. (*Dermott* v. *State,* 99 N. Y.
101; *Bruce* v. *F. N. Bank,* 79 N. Y. 154; *Hornbostel* v.
*Kinney,* 110 N. Y. 94; *Jugla* v. *Trouttet,* 120 N. Y. 21;
*Zorkowski* v. *Astor,* 156 N. Y. 393; *Lorillard* v. *Silver,* 36
N. Y. 578; *Wemple* v. *Stewart,* 22 Barb. 154; *McCluskey* v.
*Cromwell,* 11 N. Y. 593.) The theory that in some way the

performance by the plaintiff's assignor of the condition to render services was prevented without fault on his part breaks down, if the testimony as to his misconduct was true, and the truth or falsity of this testimony could only be decided by the verdict of a jury. (Wood on Master & Servant, § 118; Schouler's Dom. Rel. [5th ed.], 371, § 462.)

*John A. Straley* for respondent. There was nothing in the case to be submitted to the jury on the alleged defenses of defendant. (*Cagger* v. *Lansing,* 64 N. Y. 417; *Corning* v. *T. I. & N. Factory,* 44 N. Y. 577; *Lomer* v. *Meeker,* 25 N. Y. 361; *Appleby* v. *A. F. Ins. Co.,* 54 N. Y. 253.) The question of whether the relations between Creamer and the company were such that the company could not reasonably be expected to accept his services was wholly immaterial to any of the issues as a matter of law on the facts. (*Cagger* v. *Lansing,* 64 N. Y. 417; *Neuendorff* v. *W. M. L. Ins. Co.,* 69 N. Y. 389.) The question of any breach of the contract on Creamer's part up to March thirtieth was finally adjudicated in the prior Supreme Court actions and concludes the parties hereto. (*Griffin* v. *L. I. R. R. Co.,* 102 N. Y. 452.)

BARTLETT, J. The plaintiff is the assignee of her husband, Henry Creamer, and seeks to recover in this action from the defendant, upon his written guaranty, certain royalties due to Creamer from the Safety Electric Construction Company, as licensee under letters patent owned by Creamer.

The facts in this case are somewhat complicated, but, when understood, the material ones are few and undisputed.

Creamer was the inventor of steam traps that were used in operating machinery.

In 1888 the defendant entered into a contract with Creamer whereby he obligated himself to aid the inventor in exploiting his patents, and, under certain conditions, to pay him various sums of money. The details of this agreement are not material.

On the 10th of July, 1890, an agreement was entered into between Creamer and the Safety Electric Construction Com-

pany, which will be hereafter alluded to as the company for the sake of brevity. The company at this time held the exclusive license for Creamer, under his patents, for the United States during the unexpired term thereof, and defendant was its president.

This agreement is lengthy, and many of its provisions are immaterial in this controversy. It released defendant from all liability under the agreement of 1888, and the corporation entered into certain covenants with Creamer. Defendant, at about the same time, guaranteed in writing the performance of a certain portion of the company's contract.

The company was to have the exclusive right to make, use and sell the patented inventions, and was to pay to Creamer one-fifth of the profits as a royalty, guaranteeing him not less than $2,000 a year. He was to receive $30 a week on account of such royalty, and devote his time and attention for three years or so long within that period as the weekly payments were promptly paid, and was to give his services, if required to do so by the company, as superintendent of construction and salesman.

If the company failed to pay the thirty dollars per week, on account of such royalty, Creamer, at his election, could serve a notice in writing on its president, and all rights and privileges secured to the company, after a lapse of sixty days, were to become his property, unless before the expiration of that time the company performed its defaulted obligations.

If the company desired to cancel the contract it had the right to do so on the first day of June in any year, after first paying the amounts due Creamer up to that date.

Defendant, in a separate instrument, guaranteed that the weekly royalty of thirty dollars should be promptly paid at the end of each and every week to Creamer, and in case it was not so paid he covenanted and agreed to make the payments himself.

This guaranty was to run for a period not longer than three years from its date, and only so long as the license remained uncanceled, and Creamer should continue as salesman and

superintendent of construction of the company and render such services as provided in the contract, pursuant to the terms thereof.

This guaranty was to run from year to year, and could be terminated at the end of any year on the tender to Creamer of a reassignment of all his rights and interests in the patents.

These agreements went into effect in July, 1890, and Creamer received his royalties, with more or less regularity, up to the latter part of 1891.

On January 30th, 1892, $225.00 of royalties remaining unpaid, Creamer served notice electing to cancel the contract in sixty days, unless its conditions were performed.

By letter dated the same day the company requested Creamer to deliver the keys of the safe and the office, with any other keys belonging to the shop in his possession; with this request Creamer complied.

On February 1st, 1892, Creamer went to the company's place of business, found the door locked, and was told by the person in charge, in substance, that he had been instructed not to admit him, and his services were no longer required. The following day Creamer's attorneys wrote the company a letter, reciting the facts, and in which it was stated as follows: "We take it that you desire to dispense with his services as superintendent of construction and salesman, and will so construe the action taken by you unless notified at once."

The company replied to this letter February 3d, and stated therein, among other things, as follows: "We shall hold Mr. Creamer responsible for the damage he has caused, and further contend that under the contract we can, if we choose, call upon him again at any time to act as superintendent or salesman."

On the 30th of March, 1892, the company tendered Creamer $465.00, it being made within the sixty days allowed by the notice of forfeiture. This amount was afterwards, and on or about April 20th, 1892, sent to Creamer's attorneys in a check, which was receipted for by them as covering the royalties up to March 30th, 1892.

The present suit is to recover royalties under the contract

from the 30th of March, 1892, to the 10th of July, 1893, being the balance of the three years under the contract of guaranty.

On the 30th of March, 1892, the company began an action against Creamer for an accounting in the Supreme Court of the State of New York, and obtained an injunction restraining him from transferring any of the patents or forfeiting any of the company's rights under the contract pending the action.

On April 2nd, 1892, the company commenced another action in the Supreme Court against Creamer for an injunction restraining him from rescinding the contract. These two actions were tried together in December, 1892; the complaint in the first was dismissed, and in the second the injunction was granted.

There is no claim that the obligations of the contract between Creamer and the company were not in full force and effect as to the latter during the period covered by this action.

The learned counsel for the appellant uses this language in his brief submitted to this court : " We unhesitatingly admit that the company would have no defense to an action by Creamer or his assignee for the payment of the weekly royalty. Creamer was bound to render services only in case he was requested so to do. His rendition of services was not made a condition of the payment of the royalty as between him and the company."

The question is thus narrowed down to the contention upon which this appeal rests, that the guaranty was upon the express condition that it should be binding only so long as Creamer should continue as superintendent and salesman, and that the undisputed evidence shows that he ceased to be such before March 30th, 1892, and before any of the payments for which this action was brought became due.

It, therefore, becomes necessary to examine the provisions of the contract between Creamer and the company and those of the defendant's written guaranty. These two instruments must be read together, as the guaranty expressly refers to the terms of the main contract.

The latter contains this provision : " And the party of the second part (company) covenants and agrees to and hereby does guarantee to said party of the first part (Creamer) that the royalty due and payable to him under and by virtue of said agreement shall amount at least to the sum of two thousand dollars per year during the continuance of this license and for the full term thereof, and that he shall be paid on account of said royalty thirty dollars a week, in weekly payments, at the end of each and every week, the balance due him in any one year to be paid him at the close of such year, or within one month thereafter," etc.

It further provides : " That the said party of the first part shall devote his time and attention, to the best of his ability, to the welfare of said enterprise, as superintendent of construction and salesman, if requested so to do by the party of the second part, in the business of manufacturing said inventions and developing the same, for the period of three years, or so long within the said three years as the guaranteed royalty herein provided to be paid him shall be promptly paid from the execution of this agreement, without further compensation than as herein provided by way of said guaranteed royalty of two thousand dollars per year, due and payable to him."

It will be observed that Creamer was not, in the ordinary sense, an employee of the company, but agreed that he would make the company his exclusive licensee under these letters patent, provided they paid him certain royalties, and as a part of that agreement he was, for a period not to exceed three years, if requested so to do, to render services to the company as superintendent of construction and salesman without further compensation. In this main agreement defendant is referred to as executing a guaranty of a portion thereof, which is described as annexed.

The material portion of the guaranty reads as follows : "And I further covenant and guarantee that the weekly guaranteed royalty of thirty dollars per week only, secured to the said Henry Creamer, in and by virtue of the foregoing agree-

ment between him and the Safety Electric Construction Company, shall be promptly paid at the end of each and every week to the said Henry Creamer, his executors, administrators and assigns; and in case the same is not promptly paid, I hereby covenant and agree for myself, my executors, administrators and assigns, to pay the same at the end of each and every week as therein provided. Said guaranty, however, to run in no event for a period longer than three years from date hereof, and from year to year only, and only so long as said license shall remain uncanceled, and said Henry Creamer shall continue as salesman and superintendent of construction of said party of the second part, and render such services as provided in said contract, pursuant to the terms thereof, within the said period of three years, and is to terminate at the end of any year provided for in the foregoing contract on the mere tender to said Henry Creamer of a reassignment," etc.

The appellant's claim is that the liability of the company is much broader than that of the defendant.

As already pointed out, it is conceded that the company would have no defense in a suit for the royalties now involved.

It is urged on behalf of the defendant that he was only liable to pay the royalty of thirty dollars per week, if the company defaulted, so long as Creamer continued as salesman and superintendent of construction; that he having been discharged by the company from those positions, there was no longer any liability under the guaranty.

The respondent argues that the clear reading of the guaranty imposes a broader liability, and we are of the same opinion.

The defendant's obligation was thus limited: "Only so long as said license shall remain uncanceled and said Henry Creamer shall continue as salesman and superintendent of construction of said party of the second part, and render such services as provided in said contract, pursuant to the terms thereof," etc.

The terms of the guaranty are clearly to this effect: That the defendant is liable if the license remains uncanceled and

Creamer continues to render such services as salesman and superintendent as is provided in the contract.

The only services that Creamer was bound to render as superintendent and salesman were such as he was called upon by the company to perform. This is the plain reading of the main contract and the reasonable construction of the agreement of guaranty.

Creamer was entitled to his thirty dollars a week whether he rendered services as superintendent and salesman or not, provided the company did not see fit to call upon him. These services were essentially gratuitous, as they formed a part of the agreement which allowed the company to call upon him for these services if it saw fit without additional compensation.

The situation is briefly this: Creamer was to receive one-fifth of the profits as royalty, which the company guaranteed should not be less than two thousand dollars per year; the royalty was to be paid at the rate of thirty dollars per week in each and every week and the balance of it at the end of the year; the defendant's guaranty covered these weekly payments only.

This is the construction adopted by the court below, and it seems to us to be according to the letter and spirit of the instrument.

There is no claim that this license was canceled during the period involved in this action, or that Creamer was not always willing to act as superintendent and salesman if the company so requested.

The appellant's admission that the company would have no defense to this action practically concedes this point.

The alleged moral misconduct of Creamer is not material, in view of the fact that the company in its letter of February 3d, 1892, after having discharged Creamer and denied him admission to their place of business, stated to his attorneys, "We shall hold Mr. Creamer responsible for the damage he has caused, and further contend that under the contract we can, if we choose, call upon him at any time to act as superintendent or salesman."

The next day Creamer addressed a letter to the company wherein he returned to it his petty cash book and the balance of money on hand; he closed by saying: "I am, however, ready and willing to continue my services at your request pursuant to our contract. My address is 117 East Eighty-fourth street, New York City, and I will be glad to respond to any request you may make to continue my services."

We agree with the learned counsel for the appellant that the defendant is entitled to the application of the well-settled principle of law that a guarantor, like a surety, is bound only by the strict letter or precise terms of his contract and that the claim against him is *strictissimi juris.*

In view of the precise terms of the contract of guaranty, and the agreement to which it refers, and of which it is essentially a part, we are of opinion that the defendant is liable for the payment of the weekly royalty under the same terms and conditions precisely as the company is held.

It is true that the liability of the company is much broader than that of the defendant, as it must pay all the royalties, while the defendant is only required to pay the weekly royalty if the company makes default.

The judgment appealed from should be affirmed, with costs.

Parker, Ch. J., O'Brien, Haight, Martin, Vann and Landon, JJ., concur.

Judgment affirmed.