HARVEY BEAGLE and SILAS BEAGLE, Respondents, v. EDWIN B. CABLE, Appellant.

*Guaranty of payment for work "upon the terms and conditions" of a contract therefor — liability of the guarantor in case of a breach of the contract by the other party's refusal to supply the work.*

Cable & Buckbee, being the owners of a tract of woodland, entered into a contract with Lee & Eggleston by which the latter were to convert the timber into lumber. The contract provided that Cable should market the lumber and that one-half of the proceeds was to be retained by Cable & Buckbee and that the other half, less the advances hereinafter mentioned, was to be paid to Lee & Eggleston in full payment for their services. The contract further provided that as fast as one thousand ties were sawed fifty dollars should be advanced to Lee & Eggleston, and that when all the hemlock saw logs were delivered one dollar per thousand should be advanced and when all the pine logs were delivered two dollars per thousand, and that in case a satisfactory market could not be found on or before a certain date, then the lumber should be stored until such time as a suitable market could be obtained.

Thereafter Lee & Eggleston entered into a contract with one Apply whereby the latter agreed to do the sawing required to be done under the contract for four cents a tie and for two dollars per thousand feet of lumber, payable as follows: Twenty dollars for each thousand ties sawed and counted and twenty-five dollars for each twenty-five thousand feet of lumber sawed and counted. The remainder of the contract price was to be paid as follows: Two cents each for the ties when they were counted and accepted by a railroad company in conformity to the contract between Lee & Eggleston and Cable & Buckbee and one dollar per thousand feet of lumber when the entire job should be finished in conformity with such contract, and when the remaining sum should become due as per the terms of that contract. Contemporaneously and as a part of the transaction with Apply, Cable executed the following guaranty: "For value received, I hereby guarantee the payment of the saw bill provided for in the foregoing contract upon the terms and conditions therein imposed."

Apply assigned his contract and his assignees performed the same until Lee & Eggleston refused to furnish logs for sawing and forbade them from proceeding with the contract. The total price for the work done by Apply's assignees under the contract was $441.46, of which they had received from Cable $215, which amount represented substantially the advanced payment to which they were entitled under the contract.

*Held,* that Cable was not liable to Apply's assignees for the balance of the contract price in the absence of evidence that either the ties or lumber had been marketed.

APPEAL by the defendant, Edwin B. Cable, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of

the clerk of the county of Delaware on the 18th day of April, 1900, upon the decision of the court rendered after a trial at the Delaware Special Term.

On the 9th day of September, 1897, the defendant and one Buckbee, being then the owners of a tract of woodland, all the timber upon which they desired to cut and fit for market, so far as it was suitable for that purpose, entered into an agreement in writing with Lee & Eggleston, by which the latter agreed to cut and manufacture the said timber into lumber, ties and posts, and deliver the same at Beers' Switch, a railroad station, on or before July 1, 1898. Lee & Eggleston were to receive in full payment for their services one-half the proceeds of the manufactured timber. By the terms of the agreement the title and possession of the property was to be and remain in Cable & Buckbee. Cable was to have the exclusive right to sell and market the property when in condition to sell and receive the pay therefor, and one-half of the cash when received was to be retained by Cable & Buckbee, and the other half paid to Lee & Eggleston, less all advances made by Cable to them on the job. As fast as 1,000 ties were sawed fifty dollars per 1,000 in number was to be advanced to Lee & Eggleston, and when all the hemlock saw logs were delivered in the millyard one dollar per 1,000 was to be advanced, and when all the pine logs were so delivered two dollars per 1,000. In case satisfactory market could not be found for the lumber, ties, etc., on or before July 1, 1898, then the lumber was to be stacked upon the millyard, and the ties, etc., on the railroad land provided at or near Beers' Switch, until such time as a suitable market could be obtained for the property.

On the 3d of November, 1897, Lee & Eggleston entered into a contract in writing with one Apply whereby the latter agreed to move his sawmill upon a selected site on the lot and do all sawing required to be done in and by the contract of September 9, 1897, for the price for the ties of four cents each and for the lumber of two dollars per 1,000, payable as follows: When 1,000 ties were sawed and counted, twenty dollars, and a like sum as often as a like number was sawed and counted, and twenty-five dollars when 25,000 feet of lumber was sawed and counted and a further like sum when a further like quantity was sawed and counted. The remaining portion for sawing was to be paid as follows: Two cents

each for the ties when they were counted and accepted by the railroad in conformity to the contract of September ninth, and the remaining one dollar per 1,000 for the lumber when the entire job shall be finished up in conformity with the contract of September ninth, and when the remaining sum shall become due as per the terms of that contract. At the same time and as a part of the transaction with Apply, the defendant made and indorsed upon the contract the following:

"WALTON, N. Y., *November 3rd*, 1897.

"For value received, I hereby guarantee the payment of the saw bill provided for in the foregoing contract upon the terms and conditions therein imposed.                               E. B. CABLE."

Thereafter Apply moved his sawmill upon the lands, and on the 18th of December, 1897, transferred all his interest in the contract to the plaintiffs who agreed to do all the sawing required to be done by Apply. The plaintiffs proceeded with the work and sawed lumber to the amount of 82,668 feet and railroad ties to the number of 6,903 when Lee & Eggleston refused to furnish logs for sawing and forbade the plaintiffs from proceeding with the further performance of the contract, and no further sawing was done. The plaintiffs were ready and willing to continue and up to that time had performed the contract with Lee & Eggleston. The latter then abandoned their contract with Cable & Buckbee, leaving a large portion thereof unperformed.

The price for sawing the lumber and ties that were sawed amounted, according to the rate specified in the contract, to the sum of $441.46. The plaintiffs had received from the defendant on account of the sawing, up to the time they stopped, the sum of $215, leaving a balance of $226.46,* which has not been paid. This action was commenced in August, 1898, for the recovery of such balance from the defendant on his guaranty.

It was held by the trial court that for any sawing done by the plaintiffs under their contract with Lee & Eggleston for which they could recover of them the contract price, they could recover the same from the defendant under the terms of the guaranty. Judgment was, therefore, ordered for the plaintiffs for the balance of $226.42* and interest.

---

* *Sic.*

*Neish & More,* for the appellant.

*Marvin & Hanford,* for the respondents.

MERWIN, J.:

The recovery here is on the theory that Lee & Eggleston are liable to the plaintiffs and, therefore, the defendant is liable on his guaranty.

The defendant does not guarantee that Lee & Eggleston should perform their contract. He only guarantees the payment of the saw bill upon the terms and conditions imposed in the contract. According to those terms, a portion of the saw bill became due from time to time according as the work progressed. That amount has been paid by the defendant, or substantially that amount. The balance of the saw bill for the ties was to be paid when the ties were counted and accepted by the railroad company. That is not shown to have been done. The balance of the saw bill for the lumber was to be paid when the entire job should be finished up in conformity with the contract of September ninth between Cable & Buckbee and Lee & Eggleston, and when the remaining sum should become due according to the terms of that contract. That evidently referred to the division to be made upon a sale of the property. That contingency has not happened. The job has not been finished, and it is not shown that either the ties or the lumber that the plaintiffs sawed has been sold or marketed. So that if the terms of the contract are to be followed, the recovery cannot be sustained.

It may be that the plaintiffs could recover the amount from Lee & Eggleston, but such recovery would only be allowable by reason of the breach of the contract by Lee & Eggleston (*Nichols* v. *S. S. Co.,* 137 N. Y. 471, 487), and for such breach the defendant would not be responsible. The recovery in such case would be for damages for the breach.

In *Creamer* v. *Mitchell* (162 N. Y. 477, 486) the rule is said to be well settled that a guarantor is bound only by the strict letter or precise terms of his contract, and that the claim against him is *strictissimi juris.* The recovery here would seem to be in contravention of that rule. The defendant is made to bear the consequences of a breach by Lee & Eggleston that he did not covenant against. Under the original contract, he was the party who had the exclusive right to sell the property and then divide the proceeds. He had

the right to expect that, as to the balance of the saw bill over and above the advancements to be made as the work progressed, he would not be called upon for payment under the guaranty until he had funds from the sale of the property as contemplated in the original agreement which is referred to in the subsequent contract and its provisions adopted.

The trial court erred, I think, in charging defendant with the balance of the saw bill, and the judgment, therefore, must be reversed.

All concurred.

Judgment reversed and new trial granted, with costs of appeal to appellant to abide event.