MOSES TANENBAUM, Appellant, *v.* FEDERAL MATCH COMPANY,
Respondent.

1. CONTRACT TO PAY COMMISSION ON FIRE INSURANCE— RESCISSION.
Where a written contract required, among other things, an insurance
broker to furnish each year, for a period of ten years, a minimum amount
of fire insurance at a specified rate per hundred per year, which amount
the other party agreed to accept, and the first year's insurance having
been furnished and paid for several months before the expiration of the
year and two of the policies having been canceled by the companies, the
broker delivered two others to replace them, the mere fact that he
insisted, although erroneously, upon additional compensation for such
substituted policies at the stipulated rate, which was refused, does not
constitute a rescission or repudiation by the broker of the contract, in the
absence of evidence establishing a refusal on his part to perform it unless
his unjustifiable demands were complied with; nor is the other party
justified in rescinding it on account of his demand.

2. SAME.    The fact that such contract made the broker the agent of the
other party for the purpose of procuring insurance, does not render his
demand a violation of any confidential relation existing between the par-
ties so as to justify rescission, where in other respects they were parties
with opposing interests and each was entitled to enforce his rights under
the contract.

3. RESCISSION UNNECESSARY IN ORDER TO AVOID PRACTICAL CON-
STRUCTION OF CONTRACT.    A contention that the other party was com-
pelled to rescind the contract, lest otherwise he might be deemed to have
placed a practical construction upon it, is without force, since a prompt
refusal to comply with or submit to the broker's demands and construc-
tion of the contract would have obviated any difficulty in this respect.

4. WHEN ACTION FOR BREACH OF CONTRACT ACCRUED.    Where the
contract provided in substance that if for any reason the other party
should not take the insurance provided for, the broker should be entitled
to recover a specified sum for each year, or portion of a year, of the then

unexpired term, and such party repudiates the contract several months before the expiration of the first year, the broker is not obliged to wait until a default in the payment due at the beginning of the second year before commencing an action to recover the stipulated damages, but may bring it immediately, where the contract was not merely a naked agreement to take and pay for a certain amount of insurance, year by year, but was made up of various material and independent obligations, some of which on defendant's part were continuously operative during the life of the contract, so that performance of some of them was a condition precedent to the supply of insurance by the plaintiff, and a refusal to perform them obviated any necessity of tender of performance upon his part; and especially is this true in a case where the defense that the action was prematurely brought was not pleaded.

5. LACHES IN ASSERTING FRAUD. A contention that the plaintiff paid a much less rate of insurance to the companies than he represented to the defendant he would be compelled to pay, and that this was a fraud justifying a rescission of the contract, is without force when one of defendant's officials for a period of several months knew of the facts which made the representation, as claimed, false and fraudulent, and yet no repudiation of the contract or complaint was made.

*Tanenbaum* v. *Federal Match Co.*, 111 App. Div. 416, reversed.

(Argued April 17, 1907; decided June 4, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 22, 1906, affirming a judgment in favor of defendant entered upon a verdict directed by the court and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Ernest Hall* for appellant. The contention is untenable that the defendant was justified in repudiating the contract, because a dispute had arisen between the parties as to the amount which the plaintiff was entitled to charge. (*Graves* v. *White*, 87 N. Y. 466 ; *Dubois* v. *D. & H. C. Co.*, 4 Wend. 290 ; *McIntosh* v. *Miner*, 37 App. Div. 487 ; *Bogardus* v. *N. Y. L. Ins. Co.*, 101 N. Y. 328 ; *Lyon* v. *Hersey*, 103 N. Y. 264 ; *M. S. & I. Co.* v. *Naylor*, 9 App. Cas. 434 ; *R. Ry. Co.* v. *Brecon Ry. Co.*, 69 L. J. Ch. 813 ; *Freeth* v. *Burr*, L. R. [2 C. P.] 208 ; *West* v. *Bechtel*, 125 Mich. 144 ; *Trotter* v. *Hecksher*, 40 N. J. Eq. 612.) The contention is

untenable that the action was prematurely brought, because a second yearly premium had not yet accrued to the plaintiff when the defendant repudiated the contract. (*Nichols* v. *S. S. Co.*, 137 N. Y. 471; *Flagg* v. *Fisk*, 93 App. Div. 169; *Roem* v. *Horst*, 178 U. S. 1; *Frost* v. *Knight*, L. R. [7 Exch.] 114; *Pakas* v. *Hollingshead*, 184 N. Y. 216; *Howard* v. *Daly*, 61 N. Y. 362; *Windmuller* v. *Pope*, 107 N. Y. 674; *R. Ry. Co.* v. *B. Ry. Co.*, 69 L. J. Ch. 813; Anson on Cont. [10th ed.] 309.)

*Dickinson W. Richards* and *Alfred B. Nathan* for respondent. The plaintiff was the agent of the defendant and as such was bound to exercise the utmost good faith towards his principal. (*Murray* v. *Beard*, 102 N. Y. 508; *Claflin* v. *F. & C. Bank*, 25 N. Y. 293; *Fairman* v. *Bavin*, 29 Ill. 75; *Low* v. *Woodbury*, 107 App. Div. 299; *Roome* v. *Robinson*, 99 App. Div. 143; Story's Eq. Juris. §§ 310, 311; Bispham's Prin. of Eq. § 236; *Finlay* v. *Leary*, 87 Hun, 8; *Matter of Cohen*, 84 Hun, 586; *People* v. *Common Council*, 85 Hun, 601; *Comstock* v. *Comstock*, 57 Barb. 469; *Duryea* v. *Vosburgh*, 138 N. Y. 621; *Moore* v. *Moore*, 5 N. Y. 261.) There was evidence to support a finding of fact that the plaintiff was guilty of unfair dealings in his relations with this defendant. (*McDonald* v. *R. R. Co.*, 167 N. Y. 66; *Kelly* v. *S., etc., Ins. Co.*, 186 N. Y. 16; *Burtis* v. *Thompson*, 42 N. Y. 246.) Plaintiff's demand of the additional payments upon replacing policies operated as a rescission of the contract on his part. (*Nicoll* v. *Sands*, 131 N. Y. 19; *Woolsey* v. *Funke*, 121 N. Y. 87; *Ins. Co.* v. *Dutcher*, 95 U. S. 269; *Hill* v. *Priestley*, 52 N. Y. 635; *Central Co.* v. *R. R. Co.*, 34 Fed. Rep. 254; *Vermont* v. *Brose*, 104 Ill. 206; *Graves* v. *White*, 87 N. Y. 466; *Taylor* v. *Risley*, 28 Hun, 141; *Consumers' Co.* v. *Webster*, 79 App. Div. 357; *Dolan* v. *Rogers*, 149 N. Y. 489; *Farmer Co.* v. *R. R. Co.*, 150 N. Y. 410.)

HISCOCK, J. Appellant brought this action for the purpose of recovering upwards of $4,500 as stipulated damages for the

alleged breach by respondent of a written contract whereby, for the period of ten years, the appellant as an insurance broker agreed to furnish and the respondent agreed to accept such insurance as might be needed and not less than $50,000 per year upon the latter's factory and property at the price or premium of four dollars per hundred.

At the close of the evidence each party asked for the direction of a verdict and the trial court granted the motion of the respondent, placing its decision upon the grounds *first*, that the action was prematurely brought, respondent having committed no actionable breach at the time of its commencement, and *secondly*, that the appellant "himself had broken the contract in question by his unconscionable demand" for compensation or premiums upon certain policies of insurance furnished by him.

In the view which we take of the evidence this disposition was erroneous and the propositions upon which it was based will be considered in the inverse order from that in which they are above stated.

A short time after the contract above referred to took effect between the parties, two of the original policies procured by the appellant for respondent and running for a year were canceled by the companies and thereupon the former procured and delivered to the latter new policies to take the place of the ones thus canceled. After these had been delivered, the appellant presented a bill at the stipulated rate of four dollars per hundred and amounting in the aggregate to $300 for procuring these policies. The respondent disputed and rejected this bill upon the ground that the appellant had already received his full compensation for a year upon the original policies which had been canceled and was not entitled to a second compensation or premium upon the policies issued in the place thereof. This was the exact dispute between the parties, and appellant's alleged wrongful and unconscionable conduct which is held to have effected a breach of the contract consisted solely in his insistence that under the terms of a written contract he was entitled to compensation at the

stipulated rate upon every policy issued, whereas the respond-
ent claimed — and the courts have since held — that he was
only entitled to compensation once for an entire year of
insurance.

It is undisputed that respondent, as the result of the appel-
lant's demands and of the dispute thereby precipitated, forth-
with by acts and notice assumed to repudiate and rescind the
contract, and it is, perhaps, proper to test its standing upon
this appeal as well by the question whether it had the right
to rescind as by the one whether appellant's conduct amounted
to a rescission. If either inquiry could be answered in its
favor, such answer would lead to affirmance of the judgment.
But, as already intimated, we are unable to give such an
answer.

No authority has been called to our attention or found
which sustains the proposition that the conduct of the appel-
lant in demanding more compensation than he was entitled to
amounted to a repudiation of the contract or justified such
repudiation by the respondent.

The appellant in no wise coupled with his demand a refusal
to fulfill his contract to furnish insurance unless the same was
complied with. He had already delivered the policies on
account of which it was made, and he neither demanded the
return of them nor stated that in the future he would refuse
to furnish insurance in accordance with his contract if his bill
was not paid. His demand involved no hidden fraud upon
or deceit of the respondent. It was made openly and was
based upon a construction of a written instrument executed
by and open to the consideration of both parties, and not
induced in respect to this matter by any fraud or misrepre-
sentation. There is no evidence that the claim was not made
seriously and in good faith, however erroneously, and it is
some evidence of its plausibility that respondent's attorney
admitted the correctness of some portion of the bill and that
the trial court in the action subsequently brought to enforce
its payment decided in favor of its correctness. But it is said
that as now determined the claim was untenable; that if

enforced it would have involved serious expenses to the respondent in the course of ten years, and that, therefore, it was unconscionable and such a violation of the confidential relations existing between the parties under the contract as to effect or justify a rescission of the latter.

The fact that the appellant's construction of the contract would have made the same an onerous one for the respondent and would have rendered its insurance much more expensive than it had expected cannot be a matter of controlling influence. If the parties had fairly and understandingly executed a contract which compelled such payment, its unexpected results would not have been a ground for relief, and either party would have been entitled to insist upon performance.

Neither do we think that appellant's demand was a violation of any confidential relation between him and the respondent. The contract which they executed undoubtedly did make the appellant the agent of the respondent for the purpose of procuring insurance and in respect to that duty the former may be assumed to have been bound to act with honesty and fidelity in the interest of his principal. But there was no confidential relation between the parties in respect to the compensation to be paid by the company to the broker for his services. In relation to this they were parties with opposing interests, each standing upon his contract and entitled to enforce his full rights thereunder. Respondent's position, therefore, ultimately rests upon the proposition that if a party to a contract for the sale of goods or the rendition of services demands upon his construction of the contract a greater price or compensation than he is entitled to, this amounts to a rescission of the contract by him or affords justification to the other party for such rescission. The law of rescission of contracts has not yet advanced to that point.

Neither does it seem to us that there is any force whatever in the suggestion that when appellant presented his bill the respondent was compelled to rescind the contract lest otherwise it might be deemed to have assented to his demand and to have placed a practical construction upon the contract. Of

course if the respondent, having received the policies, had kept silent under the demands, this might have been some evidence of an assent thereto, but a prompt refusal to comply with or submit to appellant's demands and construction of the contract would have obviated any difficulty of this kind. The fact that the parties to a contract may differ and become involved in litigation about its meaning has never yet been held to afford an adequate reason for rescinding it.

The clause in the contract under which especially this action was brought reads as follows:

"It is further specifically understood and agreed that if said party of the second part shall at any time during the period of this contract, sell or dispose of its business or discontinue business, or for any other reason shall not require or take insurance under this agreement as hereinbefore provided, the parties of the first part shall forthwith be entitled to recover from said party of the second part, the sum of five hundred (500) dollars for each year or portion of a year of the then unexpired term of said contract."

The argument that the action was prematurely commenced proceeds upon these lines: The respondent, it is said, was obligated by its contract to receive and pay for a certain amount of insurance each year; at the time when the dispute arose between the parties and it announced its repudiation of the contract insurance had been written for a year which then lacked several months of expiration; announcement by respondent thus in advance that it would not be bound by the contract was not a sufficient breach to sustain an action, but it was the duty of the plaintiff to await the expiration of the year and then tender insurance and upon default commence his action. And in this argument this action is likened to one wherein the maker of a promissory note has declared in advance of its maturity that he will not pay the same, and which declaration has been held insufficient to sustain an action before the note matured.

If the assumption of facts made in this argument was complete and correct the conclusion adopted might be proper.

6

But the assumption is not complete and correct and, therefore, the conclusion is incorrect.    The contract between the parties was not a mere naked agreement upon the part of one of them year by year to take and pay for a certain amount of insurance, but it was made up of various mutual and interdependent obligations, some of which upon the part of the respondent were continuously operative during the entire life of the contract.    For instance, while the respondent was bound to take a certain minimum amount of insurance, it was also bound to take through appellant any amount required in excess of this minimum and also to take through him casualty insurance or insurance on other property if required.    It was bound not to sublet the premises or assign the lease except upon prescribed conditions, and not to increase the risks; to comply with the terms of any policies of insurance delivered to it by the plaintiff; to maintain watchmen at certain times and certain apparatus for protection against fire as the appellant might determine, and especially to allow the latter from time to time to enter upon the premises occupied by it for the purpose of making various changes, alterations, additions and repairs in and to such apparatus.    Performance of some of these agreements was fairly a condition precedent to the supply of insurance by appellant.    All of them were so connected with his obligations that when the respondent repudiated and refused longer to observe its obligations it in effect rendered impossible, and obviated any necessity of tender of performance by appellant.    It insisted upon a complete repudiation of the entire contract and appellant was entitled to take it upon its own theory and immediately bring his action for breach in accordance therewith.    (*Nichols* v. *Scranton Steel Co.*, 137 N. Y. 471; *Roehm* v. *Horst*, 178 U. S. 1.)

We think there is another answer to this argument that the action was prematurely brought.    No such defense as that was pleaded, but on the contrary respondent by its answer reiterated and unequivocally stood upon the claim that this contract was the product of fraud on the part of appellant and that it had rescinded the same.

While it was not considered either by the trial court or by the Appellate Division in dismissing the action, respondent now urges another ground which might have been so considered, and which, therefore, if well taken, might now be adopted as a basis for affirming the judgment. It claims that appellant represented to it that he could not obtain insurance at less than about the price which he was to receive under the contract with it; that it was induced by such representation to make the contract, and that as a matter of fact appellant was able to and did obtain insurance at a very much less rate than stated in said representations; that this was a fraud for which the contract might be rescinded. The evidence to sustain this theory is at certain points somewhat indefinite and obscure. While it is clear that appellant did make the representation in question, and it is probably fair to assume that respondent's officials were influenced thereby in making the contract, we have been unable to find any very distinct evidence as to the rate at which the insurance was actually obtained from the companies, unless this is to be spelled out from the premiums recited in some policies which have been put in evidence. We shall, however, assume that there was evidence to support all branches of respondent's contention upon this proposition. But doing this there remains an obstacle to the successful maintenance of this defense. The gist of this defense is that appellant paid a much less rate of insurance to the companies than he had represented to respondent he would be compelled to pay. The contract was made in September, 1900. The man who as president of the respondent dealt with and made the contract with appellant testified: "We expected Mr. Tanenbaum to make a profit; expected that he was going to make a contract out of which he would make a profit; after he had supplied the first policies under this contract I knew what he was paying the insurance companies, and never found any fault with what he was paying the insurance companies down to March 18 (1901)." It thus appears that the respondent, through its proper official, for a period of several months, knew of the facts which made

the representations, as claimed, false and fraudulent, and yet no repudiation of the contract or complaint was made. It is elementary that a person induced by fraud to enter upon a contract must promptly repudiate the same upon discovery of the fraud, and that he cannot quietly sleep upon his rights for months as did this defendant.

These views on the various points involved lead us to the conclusion that the direction of a verdict in behalf of respondent was error, and that a new trial must be had, with costs to abide event.

CULLEN, Ch. J., WERNER and WILLARD BARTLETT, JJ., concur; GRAY, EDWARD T. BARTLETT and HAIGHT, JJ., dissent.

Judgment reversed, etc.