## NEW YORK LIFE INSURANCE CO. *v.* VIGLAS.

No. 602.   Argued March 6, 1936.—Decided March 30, 1936.

---

*Mr. Frederick H. Nash,* with whom *Messrs. Louis H. Cooke* and *Richard Wait* were on the brief, for petitioner.

*Mr. Harris J. Booras,* with whom *Mr. George C. Eliades* was on the brief, for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The case, which is here upon demurrer to a declaration, depends for its solution upon the nature of the breach of contract imputed to the defendant, the petitioner in this court, and upon the measure of the damages recoverable therefor.

From the declaration we learn the following: Respondent received from petitioner on February 7, 1927, a policy of insurance for $2,000 payable at his death. The consideration was a semiannual premium of $38 payable during his life, but for not more than twenty years. If, however, the insured became totally and permanently disabled before the age of sixty, the company, petitioner, was to pay him a monthly income at an agreed rate and was to waive the payment of any premium that would otherwise be due. Disability was to be considered total when the insured was so affected by bodily injury or disease as to be wholly prevented from performing any work, from following any occupation, or from engaging in any business for remuneration or profit. In particular, "the total and irrecoverable loss of the sight of both eyes or of the use of both hands or of both feet or of one hand and one foot" was to constitute "total disability for life." Before making any income payment or waiving any premium the company might demand due proof of the continuance of total disability, not oftener, however, than once a year after such disability had continued for two full years. Upon failure to furnish such proof, or if the insured performed any work, or followed any occupation, or engaged in any business for remuneration or profit, "no further income payments" were to be made, "nor premiums waived." If at the time of a default in the payment of a premium, the insured was disabled within the definition of the policy, the insurance was to be reinstated, provided, however, that within six months after the default proofs of such disability were received by the insurer. In any event, reinstatement would be permitted at any time within five years upon evidence of insurability satisfactory to the insurer and upon payment of overdue premiums with interest at five per cent. Finally, the insured, though in default, was to have the benefit of surrender values in the form either of cash or of tem-

porary insurance or of participating paid-up insurance according to his choice.

On September 11, 1931, the insured, according to the declaration, lost "the total and irrecoverable use" of one hand and one foot, and became totally and permanently disabled. Upon proof of his condition the company paid him the monthly benefits called for by the policy from October 11, 1931, to July 11, 1933, and during the same period waived the payment of semi-annual premiums. It refused to make a monthly payment in August, 1933, and refused the same month to waive a semi-annual premium, "asserting to the plaintiff as its ground for such refusal that since it appeared to the defendant that for some time past the plaintiff had not been continuously totally disabled within the meaning of the disability benefit provision of the policy, the defendant would make no further monthly disability payments, and that the premiums due on and after August 7, 1933, would be payable in conformity with the terms of the contract." Later, upon the expiration of a term of grace, "the defendant, on or about September 19, 1933, declared the policy as lapsed upon its records." Plaintiff has elected to treat the defendant's acts "as a repudiation and denunciation of the entire contract," relieving him on his part from any further obligation.

There are two counts to his declaration. In the first, after stating the foregoing facts, he claims the cash surrender value that the policy will have in February, 1969, if he lives until that time, the date being chosen with reference to his expectancy of life under the American Table of Mortality. This value, $1,408, is less than the amount necessary to give jurisdiction in accordance with the Judicial Code. Judicial Code, § 24; 28 U. S. C., § 41. In the second count, after stating the same facts, he claims for damages the total benefits that will be payable to him during the same period of expectancy, if he

lives that long and his disability continues. The damages so computed are $15,900. No deduction is made on account of future premiums, for by hypothesis the disability will continue during life. The defendant demurred to both counts, stating in the demurrer that the declaration sets forth a cause of action for the benefits and premiums accruing prior to the date of the writ, and for nothing in excess thereof. In that view the recovery will be only $98, which is less than the jurisdictional amount. The District Court sustained the demurrer, and gave judgment for the defendant. The Court of Appeals for the First Circuit reversed. 78 F. (2d) 829. A writ of certiorari issued to resolve a claim of conflict with a decision of this court.

Upon the showing made in the complaint there was neither a repudiation of the policy nor such a breach of its provisions as to make conditional and future benefits the measure of recovery.

Repudiation there was none as the term is known to the law. Petitioner did not disclaim the intention or the duty to shape its conduct in accordance with the provisions of the contract. Far from repudiating those provisions, it appealed to their authority and endeavored to apply them. If the insured was still disabled, monthly benefits were payable, and there should have been a waiver of the premium. If he had recovered the use of hand or foot and was not otherwise disabled, his right to benefits had ceased, and the payment of the premium was again a contractual condition. There is nothing to show that the insurer was not acting in good faith in giving notice of its contention that the disability was over. *Mobley* v. *New York Life Insurance Co.,* 295 U. S. 632, 638. If it made a mistake, there was a breach of a provision of the policy with liability for any damages appropriate thereto. We do not pause at the moment to fix the proper measure. Enough in this connection that at

that stage of the transaction there had been no renunciation or abandonment of the contract as a whole. *Mobley* v. *New York Life Insurance Co., supra; Dingley* v. *Oler,* 117 U. S. 490, 503; *Roehm* v. *Horst,* 178 U. S. 1, 14, 15; *Pierce* v. *Tennessee Coal, Iron & R. Co.,* 173 U. S. 1, 3, 11.

Renunciation or abandonment, if not effected at that stage, became consummate in the plaintiff's view at the end of the period of grace when the company declared the policy "lapsed upon its records." Throughout the plaintiff's argument the declaration of a lapse is treated as equivalent to a declaration that the contract is a nullity. But the two are widely different under such a policy as this.[1] The policy survived for many purposes as an enforcible obligation, though default in the payment of premiums had brought about a change of rights and liabilities. The insurer was still subject to a duty to give the insured the benefit of the stipulated surrender privileges, cash or new insurance. It was still subject to a duty upon proof within six months that the disability continued to reinstate the policy as if no default had occurred. None of these duties was renounced. None of them was questioned. Indeed, there is lacking an allegation that notice of the entry on the records was given to the plaintiff, or that what was recorded amounted to more than a private memorandum. In that respect the case is weaker for the plaintiff than *Mobley* v. *New York Life Insurance Co., supra,* decided at the last term. There also the controversy turned upon the rejection of a claim of disability under a like contract of insurance. The insurer took the ground that the disability had ended and that premiums would not be waived. Upon default it gave notice to the insured that the policy

---

[1] See the cases collected in Vance on Insurance, 2d ed., pp. 283, 301, 302.

had lapsed. We held that the breach fell short of an unconditional abandonment. On the other hand, following the notice and before the service of a summons there were acts and declarations pointing to an understanding between insurer and insured that the lapse was not definitive, but was open to recall. ' These differences are such as to take from that decision the quality of a controlling precedent, though the analogy it offers is cogent and persuasive. Viewing the case before us independently, we hold that upon the facts declared in the complaint the insurer did not repudiate the obligation of the contract, but did commit a breach for which it is answerable in damages.

What the damages would be if there had been complete repudiation we do not now decide. Cf. *Kelly* v. *Security Mutual Life Insurance Co.*, 186 N. Y. 16; 78 N. E. 584; *O'Neill* v. *Supreme Council A. L. of H.*, 70 N. J. L. 410, 415; 57 Atl. 463. For breach short of repudiation or an intentional abandonment equivalent thereto, the damages under such a policy as this do not exceed the benefits in default at the commencement of the suit. Full justice will thus be done alike to insured and to insurer. The insured, if he proves that the benefits are due, will have a judgment effective to reinstate his policy. The insurer will be saved from a heavy, perhaps a crushing liability as the consequence of a claim of right not charged to have been made as a disingenuous pretense. Cf. *Armstrong* v. *Ross*, 61 W. Va. 38, 48; 55 S. E. 595. So the courts have held with an impressive concord of opinion.[2] *Federal Life Insurance Co.* v. *Rascoe*, 12 F.

---

[2] *Daley* v. *People's Building, Loan & Saving Assn.*, 178 Mass. 13, 18; 59 N. E. 452; *Howard* v. *Benefit Association of Railway Employees*, 239 Ky. 465, 468; 39 S. W. (2d) 657; *Woods* v. *Provident Life & Accident Insurance Co.*, 240 Ky. 398; 42 S. W. (2d) 499; *Indiana Life Endowment Co.* v. *Reed*, 54 Ind. App. 450, 460, 461; 103 N. E. 77; *Mutual Life Insurance Co.* v. *Marsh*, 186 Ark. 861, 869; 56 S. W.

(2d) 693, one of the few decisions to the contrary, was disapproved in *Mobley's* case (p. 639), and is now disapproved again.

We have no thought to suggest an invariable rule whereby the full value of a bargain may never be recovered for any breach of contract falling short of repudiation or intentional abandonment. All depends upon the circumstances. *Helgar Corporation* v. *Warner's Features, Inc.*, 222 N. Y. 449, 452, 453, 454; 119 N. E. 113.[3] There may be times when justice requires that irrespective of repudiation or abandonment the sufferer from the breach shall be relieved of a duty to treat the contract as subsisting or to hold himself in readiness to perform it in the future. *Roehm* v. *Horst, supra*, pp. 17, 18; *Nichols* v. *Scranton Steel Co.*, 137 N. Y. 471, 487; 33 N. E. 561. Generally this is so where the contract is

---

(2d) 433; *Massachusetts Protective Assn.* v. *Jurney*, 188 Ark. 821, 826; 68 S. W. (2d) 455; *Cobb* v. *Pacific Mutual Life Insurance Co.*, 4 Cal. (2d) 565; *Brix* v. *People's Mutual Life Insurance Co.*, 2 Cal. (2d) 446; 41 P. (2d) 537; *Atkinson* v. *Railroad Employes Mutual Relief Society*, 160 Tenn. 158, 167, 168; 22 S. W. (2d) 631; *Atlantic Life Insurance Co.* v. *Serio*, 171 Miss. 726, 730; 157 So. 474; *Allen* v. *National Life & Accident Insurance Co.*, 228 Mo. App. 450, 452; 67 S. W. (2d) 534; *Puckett* v. *National Annuity Assn.*, 134 Mo. App. 501; 114 S. W. 1039; *Garbush* v. *Order of United Commercial Travelers*, 178 Minn. 535, 539; 228 N. W. 148; *Kimel* v. *Missouri State Life Insurance Co.*, 71 F. (2d) 921, 923; *Menssen* v. *Travelers' Insurance Co.*, 5 F. Supp. 114; *Ginsburg* v. *Pacific Mutual Life Insurance Co.*, 5 F. Supp. 296; *Hines* v. *Fidelity Mutual Life Insurance Co.*, 6 F. Supp. 692; *Kithcart* v. *Metropolitan Life Insurance Co.*, 1 F. Supp. 719; *Wyll* v. *Pacific Mutual Life Insurance Co.*, 3 F. Supp. 483; *Parks* v. *Maryland Casualty Co.*, 59 F. (2d) 737; cf. *Kelly* v. *Security Mutual Life Insurance Co.*, 186 N. Y. 16; 78 N. E. 584; *Killian* v. *Metropolitan Life Insurance Co.*, 251 N. Y. 44, 48; 166 N. E. 798.

[3] For a collection of the cases, see Williston, Contracts, vol. 2, §§ 864, 866, 867, 870; vol. 3, § 1290; and cf. Restatement, Law of Contracts, vol. 1, § 275.

a bilateral one with continuing obligations, as where a manufacturer has undertaken to deliver merchandise in instalments. *Norrington* v. *Wright*, 115 U. S. 188; *Wolfert* v. *Caledonia Springs Ice Co.*, 195 N. Y. 118; 88 N. E. 24. Even then, the rights that are his may depend upon the grounds of the rejection or the nature of the default, whether unintentional or wilful. *Helgar Corporation* v. *Warner's Features, Inc., supra.* On the other hand, a party to a contract who has no longer any obligation of performance on his side but is in the position of an annuitant or a creditor exacting payment from a debtor, may be compelled to wait for the instalments as they severally mature, just as a landlord may not accelerate the rent for the residue of the term because the rent is in default for a month or for a year. *McCready* v. *Lindenborn*, 172 N. Y. 400, 408; 65 N. E. 208; cf. *National Machine & Tool Co.* v. *Standard Shoe Machinery Co.*, 181 Mass. 275, 279; 63 N. E. 900; *Wharton & Co.* v. *Winch*, 140 N. Y. 287; 35 N. E. 589. With the aid of this analysis one discovers the rationale of the cases which have stated at times, though with needless generality, that by reason of the subject matter of the undertaking the rule applicable to contracts for the payment of money is not the same as that applicable for the performance of services or the delivery of merchandise. Cf. *Roehm* v. *Horst, supra,* at p. 17; *Moore* v. *Security Trust & Life Insurance Co.*, 168 Fed. 496, 503; *Howard* v. *Benefit Association of R ilroad Employees*, 239 Ky. 465, 470; 39 S. W. (2d) 657; *Washington County* v. *Williams*, 111 Fed. 801, 810; Restatement, Law of Contracts, § 316. The root of any valid distinction is not in the difference between money and merchandise or between money and services. What counts decisively is the relation between the maintenance of the contract and the frustration of the ends it was expected to subserve.

The ascertainment of this relation calls for something more than the mechanical application of a uniform formula. To determine whether a breach avoids the contract as a whole one must consider what is necessary to work out reparation in varying conditions.

If that test be applied, the declaration will not stand. The plaintiff does not need redress in respect of unmatured instalments in order to put himself in a position to shape his conduct for the future. If he is already in default for the non-payment of a premium, he will not be in any worse predicament by multiplying the defaults thereafter. On the other hand, if his default is unreal because the premiums had been waived, the insurer will be estopped from insisting upon later premiums until the declaration of a lapse has been canceled or withdrawn. Besides, if the disability is permanent, there will be nothing more to pay. The law will be able to offer appropriate relief "where compensation is wilfully and contumaciously withheld." *Cobb* v. *Pacific Mutual Life Insurance Co.*, 4 Cal. (2d) 565; 51 P. (2d) 84.

We have refrained in what has been written from developing the distinction between an anticipatory breach and others. The line of division between the two has not always been preserved with consistency or clearness. To blur it is prejudicial to accuracy of thought as well as precision of terminology. Strictly an anticipatory breach is one committed before the time has come when there is a present duty of performance. *Roehm* v. *Horst, supra;* Pollock on Contracts, 9th ed., p. 293; Williston, Contracts, vol. 3, § 1296 *et seq.*, collecting the decisions. It is the outcome of words or acts evincing an intention to refuse performance in the future. On the other hand, there are times, as we have seen, when the breach of a present duty, though only partial in its extension, may confer upon the injured party the privilege at his election

to deal with the contract as if broken altogether. A loose practice has been growing up whereby the breach on such occasions is spoken of as anticipatory, whereas in truth it is strictly present, though with consequences effective upon performance in the future. The declaration in the case at hand makes a showing of a present breach. It does not make a showing of a breach so wilful and material as to make acceleration of future benefits essential to the attainment of present reparation. *Helgar Corporation* v. *Warner's Features, Inc., supra.*

The judgment of the Court of Appeals should be reversed and that of the District Court affirmed.

*Reversed.*