DUN & BRADSTREET, INC., RESPONDENT, v. WILSONITE PRODUCTS CO., INC., APPELLANT.

Argued October 6, 1942—Decided March 31, 1943.

Before Justices BODINE, HEHER and PERSKIE.

For the appellant, *Abraham R. Klitzman.*

For the respondent, *Goldstein & Novogrod* (*William Novogrod*).

The opinion of the court was delivered by

BODINE, J. The suit was upon a written contract for a credit rating service. It was tried in a District Court and the plaintiff had judgment. The defendant appeals. The pertinent portion of the contract was as follows: "Terms of Subscription to Dun & Bradstreet, Inc. The undersigned hereby employs Dun & Bradstreet, Inc., to furnish credit reports on individuals, partnerships and corporations engaged in mercantile or commercial business in the territory covered by the Reference Books herein specified, for the term beginning January 1st, 1941, and ending December 31st, 1941, and agrees to pay in advance, Two Hundred Twenty-five dollars ($225.00/xx). If the reports requested exceed a minimum of 50 we agree to pay on demand for additional reports at the rate of $1.25 each. To facilitate the service, Dun & Bradstreet, Inc., is to loan to the Undersigned its Reference Book designated as Number 2, Editions of: January, 1941 May, 1941 Sept., 1941."

The defendant was obligated to make quarterly payments of $56.25 on the 1st of January, April and July and October, 1941.

The suit was brought in the first instance against the defendant and the Railway Express Agency, Incorporated, and resulted in a verdict of no cause of action against the latter.

The disputed fact was whether the defendant had refused to accept delivery of the books from the Express Agency. The uncontroverted fact was that two books were timely expressed from the plaintiff's home office properly addressed to the defendant at its place of business and charges were prepaid. No quarterly payments were made. Probably in response to letters asking payment the defendant wrote on May 8th, 1941, as follows: "In answer to your letter of May

6th, we are at a loss to know why you keep billing us for your service, as, up to the present time, we have neither had your book or any other part of your credit service, except a few circular letters from you from time to time. The writer feels that if you will look this matter up, you will find the above to be the fact."

After taking the matter up with the Express Company, the plaintiff received the following report which was placed in evidence: "Subsequent to your first inquiry regarding two shipments for the Wilsonite Products Co., you were advised first that the shipments were on hand and I later reported to you that delivery of both shipments were made on May 23d, 1941, signed by the receiving clerk, T. Hay. It was necessary to continue with the express agent at Allenwood, N. J., for explanation why delivery could not be effected and I am just in receipt of report that the Wilsonite Products Co. get many express shipments and are notified promptly by telephone. In this instance they were notified several times that shipments were being held, but no effort on the part of Wilsonite Products Co. was made to take those shipments from the express office."

The defendant offered the testimony of an assistant secretary and treasurer of the Wilsonite Company, who had charge of the office. She said express shipments were picked up at the Manasquan express office, and testified to the following custom respecting them: "Well, sometimes they would just drop us a card and say there was a carton there and different other times they would call up, and about once a week usually we would have a shipment come in." It appears also that shipments were picked up by Tom Hay, foreman and shipping clerk, who would use his car and once when the packages were very numerous a truck was secured. She further testified: "It was in May, I think it was—it was in May, our man went down to pick up some cartons and other things down there and this Dun and Bradstreet stuff just happened to be on the pile and of course he brought it back. * * * Q. When did you first learn that you had the books in your possession? A. Well, about ten days before the fire we were out there getting some things and we had gotten what we

wanted, and they had gotten buried with some other cartons, and so we were sorting things and cleaning up and sorting it over and we happened to discover them. *Q.* When these books were discovered were they opened up? *A.* No, they were never opened up. Mr. Wilson said he was going to refuse them and so we were going to ship them right back. \* \* \* *Q.* Do you still have those books, Miss Hurley? *A.* No, they were destroyed in the fire." She further testified that Hay would have occasion to talk to the Railway Express Agency about shipments to the company.

The express agent, at Manasquan, testified that Hay came in to the office about once a week to receive express packages addressed to the company for which he worked; that besides telephoning to that company's office on many occasions he had talked to Hay about the shipments and he would say: "Just as soon as I can get a truck I will come down and get it all." He further testified: "Tell us, sir, why weren't these shipments turned over to him? Why didn't you give him these shipments and insist he take them out of there? *A.* Well, I can insist but they have to pick them up, that's a different story, I can't take them up to them because we have no delivery. \* \* \* *Q.* Did you at any time prior to May 23d tell him that there was a package from Dun & Bradstreet, Inc.? *A.* Yes. \* \* \* Did you tell him it was from Dun & Bradstreet, or did you say to him 'I have a package here?' *A.* I told him it was from Dun & Bradstreet and it was laying right there in front of him. \* \* \* *Q.* Relating to Dun & Bradstreet's position in this matter, you have testified that the Wilsonite Products Company refused delivery in effect, I mean that has been the gist of your testimony, I think that's how you inferred that, or they didn't take delivery, I will put it that way? *A.* That's right."

Appellant's first point is that the court's charge was erroneous in that he directed the jury that it must bring in a verdict against one or both of the defendants. However, the express agent's testimony as to a refusal to accept delivery of the books was not controverted so that standing alone this portion of the charge was not erroneous if an immediate right of action existed.

However, the present action was brought on the theory of an anticipatory breach, but the proofs are barren of such an occurrence, except for the inadmissible statement of the assistant secretary and treasurer as to what Mr. Wilson had said about packing up the books. However, there was no evidence that any such intention was ever expressed by the defendant to the plaintiff. The test as to when an anticipatory breach gives rise to an action was stated by Mr. Justice Pitney to be as follows: "Numerous reported decisions have laid down the doctrine that where a contract embodies mutual and interdependent conditions and obligations, and one party either disables himself from performing, or prevents the other from performing, or repudiates in advance his obligations under the contract and refuses to be longer bound thereby, *communicating such repudiation to the other party,* the latter party is not only excused from further performance on his part, but may, at his option, treat the contract as terminated for all purposes of performance, and maintain an action at once for the damages occasioned by such repudiation, without awaiting the time fixed by the contract for performance by the defendant." *O'Neill* v. *Supreme Council, &c.,* 70 *N. J. L.* 410. See, also, *New York Life Insurance Co.* v. *Viglas,* 297 *U. S.* 672, 681.

However, if the proofs at a new trial show the tender of and the refusal of the third volume this question will not arise. Failure to make payment of an installment due the plaintiff standing alone would not discharge the plaintiff of its contractual obligation. *Blackburn* v. *Reilly,* 47 *N. J. L.* 290; *Empire Rubber Manufacturing Co.* v. *Morris,* 77 *Id.* 498. Of course, it could have rescinded and sued for the installments due, but this it did not elect to do. There was no clause in the contract providing that if there was default in any one payment all others would become immediately due.

One of the very troublesome questions relate to the admission in evidence of the statements made to the express agent at his office by Hay, defendant's foreman and agent, for the collection of express packages. Words spoken or acts done by an agent in the execution of his agency are admissible in evidence against the principal. *Ashmore* v. *Pennsylvania*

*Towing Co.,* 38 *N. J. L.* 13; *Blackman* v. *West Jersey and Seashore Railroad Co.,* 68 *Id.* 1. In an action on a lost policy of insurance the declarations of the secretary of the company, whose duty it was to prepare and deliver policies, were evidential against his principal. *Insurance Co.* v. *Woodruff,* 26 *Id.* 541. A declaration of one in charge of a section of a canal made to those who complained to him of an unlawful diversion of water was admissible because it was his duty to remedy the wrong. *Halsey* v. *Lehigh Valley Railroad Co.,* 45 *Id.* 26.

"A statement made by a general agent of a corporation, in the course of his employment, as to a fact within his official knowledge touching the status of a matter entrusted to him, is admissible in evidence on behalf of the party with whom the corporation was dealing." *Agricultural Insurance Co.* v. *Potts,* 55 *N. J. L.* 158, 162. See, also in accord, *Hill* v. *Adams Express Co.,* 77 *Id.* 19; *Christy* v. *New York C. and Hudson River Railroad Co.,* 90 *Id.* 540; *Van Allen* v. *Lobel,* 123 *Id.* 273; *Waggener* v. *Fidelity Union Trust Co.,* 127 *Id.* 146.

We think the trial judge properly received the proof of Hay's declarations since they fall within the rule. They were made while he was performing one of the duties which he was employed to do and relate thereto. They were spoken in the execution of that agency.

The charge was faulty in several particulars, and the evidence was insufficient in the particulars noted to establish the cause of action sued upon.

Respondent urges that "the granting, by a judge of a District Court, of a rule to show cause why a new trial should not be granted shall, unless expressly stipulated to the contrary in the rule, be a waiver of any grounds for appeal to the Supreme Court existing in favor of the party obtaining the rule." *N. J. S. A.* 2:32-205. This section requires that there be a reservation of the points of law taken at the trial in order to support an appeal. *Guarraia* v. *Metropolitan Life Insurance Co.,* 90 *N. J. L.* 682; 101 *Atl. Rep.* 298. But the rule provided as follows: "And it is further ordered that the granting of the within rule to show cause should not be a

waiver of any grounds for appeal in favor of the defendant Wilsonite Products Co., Inc."

The record does not disclose, except vaguely, the matters argued on the rule so that we cannot say with certainty that the questions now before us were argued before. *The Morris Plan Corp.* v. *Leschinsky,* 113 *N. J. L.* 414.

The judgment is reversed, but without costs to either party.