**CITY OF HAMPTON, VIRGINIA,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

**No. 6857.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 19, 1954.

Decided Jan. 5, 1955.

J. Warren Stephens, Newport News, Va., and Harry H. Holt, Jr., Hampton, Va. (Joseph E. Healy, Jr., Hampton, Va., on brief), for appellant.

William F. Davis, Asst. U. S. Atty., Norfolk, Va. (L. Shields Parsons, Jr., U. S. Atty., Norfolk, Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

United States of America instituted this civil action against the County of Elizabeth City, Virginia, to recover damages for the breach of a contract executed in 1937 by the original parties to this suit. In 1952, shortly after the complaint was filed, the City of Hampton, Virginia, was incorporated by an Act of Assembly of Virginia whereby the County of Elizabeth City, the Town of Phoebus and the old City of Hampton were consolidated. The new city thereupon became liable for all the debts and obligations of the County, and was accordingly substituted for the latter as the defendant in this case. After the

answer of the City was filed the Government moved for summary judgment on the pleadings and documents of record; and the District Court granted the motion and entered judgment for the United States for $27,500 with interest at three per centum per annum from December 5, 1948 until paid.

On February 2, 1937 the County and the United States entered into the agreement in suit. The Government was establishing a housing project, known as Aberdeen Gardens, for approximately two hundred families near the City of Newport News in the County; and a sewage pumping plant was needed and also a sewage disposal main to connect the pumping plant with the existing sewage system of the County. By the contract the County agreed to construct and maintain a sewage pumping plant, including a chlorination unit, at the project, and also a sewage disposal main from the pumping plant to a point in the sewage disposal system of the County. The Government agreed to grant to the County the necessary easements over the project property, and to acquire and assign to the County free of charge the necessary easements for that part of the main to be constructed over private property, for the purpose of the installation and maintenance of the facilities to be constructed by the County; and the Government agreed to pay to the County $27,500 when the pumping plant and mains were completed, and also to pay the County $50 per month for disposing of the sewage from the project until a sanitary district should be formed under the laws of Virginia.

It was also agreed that when the connection with the County sewage system was made, and as soon as the County could legally assess local taxes for such purposes pursuant to the formation of a sanitary district under the laws of Virginia, and as soon as such taxes were collectable from the residents of the district, the County would relieve the Government of the service charge and pay to the Government, out of the revenues derived from the district within forty years from the date on which the taxes became collectable, the sum of $27,500 in equal annual installments with interest at the rate of three per centum per annum on the amount from time to time remaining unpaid. It thus appears that under the terms of the agreement the County became the owner of the pumping station and connecting main, when constructed, and incurred the obligation to pay the sum of $27,500 to the United States.

In view of the fact that the County had no power to initiate proceedings to form a sanitary district, the Government also agreed to make a part of its contract with each purchaser or transferee of property in the project an agreement on the part of the purchaser or transferee to become a qualified voter and do his part in the formation of the sanitary district.

The pumping plant and connecting main were constructed by the County and the Government paid the sum of $27,500 under its agreement. On September 21, 1946 the Circuit Court for the County entered an order establishing a Public Facilities District known as Aberdeen Garden District under the authority of Ch. 93 of the Acts of Assembly of Virginia of 1946; and the power was thereby given to the County to levy taxes and assessments to pay the expenses incident to the establishment and operation of the facility. No tax, however, has ever been levied to enable the County to perform its obligation to repay the Government for the monies advanced.

In addition to the pumping station and connecting main the Government on its part constructed an internal sanitary sewage collection system in the project to serve the dwellings therein, consisting of 3375 linear feet of ten inch mains, 6105 linear feet of eight inch mains, and thirty-three manholes. In the fall of 1946 the Federal Public Housing Authority offered to sell this equipment to the County. The County executive wrote to the Authority on December 4, 1946 "that the County could not purchase the

sanitary sewer system located at Aberdeen Gardens" because the expenditures involved would cause excessive taxation, but the County would be glad to accept and operate the system if it should be conveyed to it without cost. On December 13, 1946 the representative of the Housing Authority wrote to the County executive that he felt sure that the transfer of the project sewer mains could be made without charge and if it should be made the "district would then own the entire sanitary sewer system serving Aberdeen Gardens"; but the representative of the Authority noted that the County executive in estimating the necessary tax for maintenance had overlooked the obligation to repay the Government the sum of $27,500 with interest out of the revenue of the district, which the County had undertaken in the contract of February 2, 1937.

On December 19, 1946 the County executive informed the Authority of a meeting which he had had with the purchasers of the properties in Aberdeen Gardens in which he told the owners that the maximum public facility tax would be 90¢, except for the additional tax that might have to be levied to pay the Housing Authority "for the sewage pumping and disposal system." The letter further stated that the reference of the Authority to the 1937 contract was irrelevant as the residents of Aberdeen Gardens were the only ones who would have to pay for the sewage disposal system after it was acquired by the County.

Several additional letters passed between the parties and finally the County was informed that the Government would convey the "project sewer distribution mains" to the County for one dollar, and the County accepted the proposal and requested the Authority to prepare the necessary conveyance. Accordingly a quit claim deed of February 28, 1947 was executed wherein there was conveyed to the County "the sanitary sewage collecting system installed for use in connection with Aberdeen Gardens Project, Newport News, Virginia," which was particularly described as consisting of the items above mentioned; but no mention was made of the pumping station or connecting main. Whatever uncertainty may have previously existed in the minds of the representatives of the County as to the extent of the Government gift was then resolved, since the conveyance was clearly limited to the internal collection system of the project, and there was no reference to the facilities constructed by the County, and no release of the obligation assumed by the County under the agreement of February 2, 1937 was given.

On November 12, 1947 the County authorities accepted the maintenance of the services in the Aberdeen Public Facilities District. Under the Virginia law the County had authority to levy taxes for the year 1948; and on October 14, 1948 the County was notified by the Government that the payment of the first instalment under the contract of February 2, 1937 would be due on January 1, 1949; but the County answered on November 16, 1948 that it was of the opinion that the deed of February 28, 1947 had nullified the 1937 agreement, and the present suit ensued. The District Court held that no language in the deed or in the letters indicated any intent by the Government to release this obligation to pay the sum of $27,500. He thereupon entered judgment for the sum claimed with interest at three per centum from December 5, 1948, when the taxes levied for the year 1948 became a lien on the property under the local law. He was of the opinion that the County's denial of all liability and its failure to pay the instalments when due accelerated the obligation of the County and caused the entire amount to be due at that time.

We are in accord with the conclusion of the District Court that the obligation assumed by the County in the contract of 1937 was still outstanding and that the repudiation of that contract by the County constituted a breach of the agreement. The entry of a sum-

mary judgment was proper since the facts were not in dispute. There is no foundation for the arguments now advanced by the defendant that no recovery can be had under the contract because it called for payment from a special fund and no such fund is in existence. The fund has no existence merely because the City failed to levy the necessary taxes and hence the defense does not exist. See Harmer v. Tracey, 115 W.Va. 349, 176 S.E. 238; 17 C.J.S., Contracts, § 502(b).

 We think, however, that judgment should not have been rendered for the full amount of $27,500 which, under the contract, was payable out of the revenues of the sanitary district, with interest, in forty annual instalments, as soon as taxes and assessments were collectable from the residents of the district. The judge was of the opinion that the failure to meet the early instalments under the terms of the contract caused the entire amount to become due. We do not think that such conclusion is justified. The case is not one of anticipatory breach but of partial breach with repudiation of all liability under the contract. As the contract had been fully performed on the part of the United States and all that remained to be done under the contract was the payment of money in instalments by the City, recovery of instalments past due would give plaintiff the full measure of reparation to which it was entitled at the time of the institution of suit. New York Life Ins. Co. v. Viglas, 297 U.S. 672, 679–681, 56 S.Ct. 615, 80 L.Ed. 971. Whatever be the rule with respect to other contracts, it is clear, under the authorities, that for breach of a contract for the payment of money in instalments, where the contract is unilateral or has become unilateral as the result of performance by the complaining party, the right of recovery is limited to the instalments due at the time of institution of suit. New York Life Ins. Co. v. Viglas, supra; Roehm v. Horst, 178 U.S. 1, 18, 20 S.Ct. 780, 44 L.Ed. 953; General American Tank Car Corp.

v. Goree, 4 Cir., 296 F. 32; Moore v. Security Trust & Life Ins. Co., 8 Cir., 168 F. 496; Washington County, Neb., v. Williams, 8 Cir., 111 F. 801, 810, 811; Simpson v. Scott, 189 Va. 392, 53 S.E.2d 21; Holcomb v. Webley, 185 Va. 150, 37 S.E.2d 762; Restatement of Contracts, §§ 316, 317, 318, 1948 Supplement; 12 Am.Jur. p. 973; note 105 A.L.R. 460, 465. Of course, the effect of a judgment for the past due instalments is to establish the liability of defendant under the contract, as fully as if this were done by declaratory judgment; and on the principle of res judicata this will facilitate recovery on other instalments as they fall due.

In the pending case the City had power to levy and collect taxes in the year 1948 to enable it to begin to make the payments under the contract of 1937; but it failed to levy the taxes or to make the payments, and repudiated the contract by taking the position in its letter of November 16, 1948 that the obligations of the contract of 1937 had been cancelled by the quit claim deed of 1947. If the taxes had been levied in 1948 they would have been collectable in that year and the City could have used the funds to pay the first instalment on the loan. Its obligation to make that payment then arose and the right of the Government to sue the City for non-payment of the first instalment then accrued. But the Government had no right under the law to recover the total sum of $27,500 because, as we have seen, the contract, which was originally bilateral, had become unilateral by full performance on the Government's side, leaving only the re-payment by the City in instalments of the money advanced by the Government

The judgment of the District Court must therefore be modified and the case remanded for further proceedings in which the District Court should ascertain the amount of the overdue annual instalments, beginning with the year 1948 when taxes upon the residents of the sanitary district would have been collectable if the City had not failed to

levy them. Interest should run from January 1, 1949, the date as of which the Government made demand for the first payment.

Modified and remanded.