**Joseph Clinton MYERS**

v.

**MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION.**

Civ. No. 705.

United States District Court
W. D. Virginia, Roanoke Division.

April 29, 1955.

R. Dale Myers, Radford, Va., and Arnold Schlossberg, Roanoke, Va., for plaintiff.

R. Roy Rush, Roanoke, Va., for defendant.

PAUL, Chief Judge.

From the pleadings in this case it appears that on April 19, 1951, the plaintiff

was issued by the defendant a policy of what is referred to as health and accident insurance. The policy provided for certain benefits for injuries resulting from accident, including among others the loss of one or of both eyes. It provided also for benefits for loss of time due to such accidental injuries or to sickness, these being referred to as "disability benefits".

Under the heading "Sickness Benefits" (being the only part of the policy pertinent to the question now before the court) is the following provision:

"Part F.

If the Insured, because of such sickness, shall be continuously confined within doors, the Association will pay benefits for one day or more (benefits begin on the date of the first medical treatment during confinement) during the period of such confinement at the rate of One Hundred ($100.00) Dollars per month if such confinement commences prior to age sixty or at the rate of Fifty ($50.00) Dollars per month if such confinement commences on or after the Insured's sixtieth birthday; provided the Insured is under the professional care and regular attendance of a legally qualified physician, other than himself, at the place of confinement and such sickness causes continuous total disability and total loss of time."

There is a further provision of the policy (Part J.) that if the disability described in Part F. shall continue uninterruptedly for a period of a year, all premiums thereafter becoming due during the period of disability would be waived.

The following facts appear in connection with this policy. In the written application for the policy made out on the customary form and including questions as to the physical condition of the applicant there appear, among others, the following questions and answers:

13. To the best of your knowledge are you sound physically and mentally? (Answer) yes.

14. Have you any impairment of sight or hearing? (Answer) No.

The application also contained at the end thereof the statement that application was made for a policy "to be issued solely and entirely in reliance upon the written answers to the foregoing questions * * *". The application was signed by the plaintiff April 16, 1951. Thereafter the policy issued dated April 19, 1951.

In October, 1952, the insured discussed with the agent of the insurer (a Mr. Peade, through whom the policy had been negotiated) some trouble that he was having with his left eye, and on this occasion disclosed to Mr. Peade that he had lost the sight of his right eye in 1938. On learning that the insured, contrary to the recital in the application, had only one eye at the time the policy was issued, the agent told the insured that the policy should be turned over to him to have its provisions modified in the light of this fact. The policy was delivered to the agent and thereafter a rider was attached to the policy in these words:

"Specific Loss Rider

"In consideration of the issuance of Policy No. KS100–108175–51M, to which this rider is attached and made a part, for the premium recited therein, said policy is hereby amended to eliminate any indemnity for loss of both eyes. Benefits for loss of eyes or time caused by or resulting from any injury to or disease of either or both eyes shall not exceed $625.00.

"Anything in the policy inconsistent with this rider is hereby amended to agree herewith."

The rider was dated to conform to the date of the original policy and the policy, with the rider attached, was returned to the insured about Nov. 1, 1952. The insured at that time raised no question as to the language or meaning of the rider.

In April or June, 1953, (it is not clear which) the plaintiff filed a claim of total disability. No copy of the claim is in

the records but presumably it was based on the contention that the sight of the left eye had become so badly impaired that this failure, along with the prior loss of the right eye, rendered the insured totally disabled. This appears to be the plaintiff's position in this action.

Following the filing of the claim of disability the parties had discussions as to the benefits due to the insured. Without reciting the details of these, it need only be said that the insurer on October 16, 1953, paid the insured the sum of $621.66 and has since tendered the additional sum of $3.34, the two amounts aggregating the sum of $625. It is not clear under what phase of the policy payment was made. The insured asserts that the $621.66 represents six monthly disability payments of $100.00 each covering the period from March 21, 1953, to September 21, 1953, together with $21.66 hospital charges; while apparently the insurer considers the payment and tender as being the $625 which it is obligated to pay under the rider.

The plaintiff instituted this action on July 30, 1954, basing his complaint on the allegation that he is totally disabled within the meaning of the policy and has been entitled to benefits of $100 a month since March 21, 1953; that the defendant paid such benefits for a period of six months, or until September 21, 1953, but has refused to continue such payments beyond the last named date. The substance of the answer is that the defendant has fulfilled all of its obligations as determined by the rider. The plaintiff, in order to escape the force of the rider, alleges that it does not embody the understanding which the parties had when the rider was attached, that it is void and without consideration.

■ A motion for summary judgment in its favor has been made by the defendant, in the hearing of which various contentions were advanced by both parties touching the negotiation of the policy and of the rider. It was during consideration of the motion for summary judgment that there arose the question now to be considered and which, for the time being, renders immaterial any others. This is the question of jurisdiction in this court. No question of jurisdiction has been raised in the pleadings by the parties. It has been suggested by the court on its own motion as a result of a consideration of the admitted facts and the terms of the insurance policy. Both parties seemingly desire to stay in this court for they both argue in favor of jurisdiction. But jurisdiction cannot be obtained by consent of the parties; and whenever lack of it appears to the court the action must be dismissed. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182, 56 S.Ct. 780, 80 L.Ed. 1135.

The prayer of the complaint, briefly stated, is: (1) That the court compel the defendant to pay the plaintiff the sum of $100.00 per month disability benefits from September 21, 1953; (2) that the court require the policy to be kept in force without the payment of premiums; (3) that the court declare the rider on the policy void and of no effect; (4) that the plaintiff have judgment against the defendant for the sum of $18,924, this being calculated at the rate of $100 a month for the life expectancy of the plaintiff, which is alleged to be 15.77 years.

I am of opinion that this court lacks jurisdiction because of the insufficiency of the amount in controversy. In this connection certain facts must be kept in mind. The policy here is not one of life insurance of the familiar type providing for the payment of a named amount in case of death, with the additional provision for waiver of premiums and payment of monthly benefits in event of total disability prior to death. This policy primarily insures against disability due to health or accident. It is true that Part K under the heading "Specific Losses" provides for the payment of certain definite amounts for loss of life or for the loss of certain members of the body, but only when these losses are due to accident.

Of most significance is the fact that this action is not one to cancel the policy

or in which its validity is questioned. The defendant might have been in position to seek cancellation of the policy when it first learned of the misrepresentation in the application as to plaintiff's eyesight. However, it did not do so; but on the contrary it elected to continue the policy in force after undertaking by agreement with the insured to modify the terms of the policy as set out in the rider. In its answer the defendant nowhere questions the validity of the policy but rests its defense on the ground that "it has fully performed its agreement under the policy".

As pointed out heretofore, the defendant insists that it has performed all its obligations as fixed by the rider. The plaintiff, contending that the rider is invalid, ignores its provisions and sues for disability benefits which he claims are due him under the policy as originally written. But regardless of any question about the validity or applicability of the rider the plaintiff has failed to allege any facts showing the existence of the required jurisdictional amount. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135, where it is said: "He (the plaintiff) must allege in his pleading the facts essential to show jurisdiction".

What the plaintiff is seeking to recover are the disability benefits at the rate of $100 from September 21, 1953, the date when he alleges the defendant stopped paying the benefits. Even if the plaintiff were conceded to be right in every contention he makes; even if the rider is invalid, or even if the rider had never been attached and the original policy stood unaltered, the only right the plaintiff could have is to collect such disability benefits as were due him up until the time he sued. And these at most amounted to $1,000, representing the ten months from September, 1953, until suit was brought in July, 1954.

The prayer for a present judgment for the total amount which the plaintiff might collect if he lived throughout his life expectancy and remained totally disabled during that time cannot be used as a device to raise the amount in controversy to meet jurisdictional requirements. The defendant did not agree to pay the plaintiff benefits in a lump sum based on his expectancy of life, nor did it agree to pay him benefits as long as he lived. The utmost that he can contend is that he is entitled to receive $100 a month, *payable monthly* as long as he remains disabled. He is not entitled to receive the monthly payments in advance, but only as each becomes due.

The case of Mutual Life Ins. Co. of New York v. Moyle, 4 Cir., 116 F.2d 434, was one involving a life insurance policy with disability benefits, where the controversy related to the liability of the insurer for the continued payment of the disability benefits. The court, after referring to the fact that the validity of the policy was not in question, said at page 435:

"We think it clear that all that is in controversy is the right of the insured to the disability payments which had accrued at the time of suit. The company is obligated to make these payments only so long as the condition evidencing total and permanent disability continues; and, as this condition, theoretically at least, may change at any time, it is impossible to say that any controversy exists as to any disability payments except such as have accrued." (Citing various cases.)

In this same case (at page 436) the court expressly refuses to accept the theory that the amount of the disability payments over the life expectancy of the insured fixes the amount in controversy for purposes of jurisdiction.

New York Life Ins. Co. v. Viglas, 297 U.S. 672, 56 S.Ct. 615, 80 L.Ed. 971, is another case where the court rejected the theory that the total of the disability benefits for the life expectancy of the insured could be made the measure of the amount in controversy.

See also Button v. Mutual Life Ins. Co., D.C., 48 F.Supp. 168; Wright v. Mutual Life Ins. Co., 5 Cir., 19 F.2d 117, affirmed 276 U.S. 602, 48 S.Ct. 323, 72 L.Ed. 726; Commercial Casualty Ins. Co. v. Fowles, 9 Cir., 154 F.2d 884, 165 A.L.R. 1068.

In summary, the situation as shown by the pleadings is this: the defendant contends that its obligations are fixed by the terms of the rider and that it has complied with them; the plaintiff contends that the rider is of no effect and that he is entitled to benefits based on total disability resulting from the loss of the eye. If the defendant is correct, then it has fulfilled its agreement by the payment of the $625. If the plaintiff is correct, then he is entitled to collect such (and only such) of the monthly disability payments as are past due. But in neither event is there involved an amount necessary to give this court jurisdiction, and the action must be dismissed for that reason.