## Stearne v. Mutual Benefit Health & Accident Association

*Hyman Schwartz,* for plaintiff.
*Walter B. Gibbons,* for defendants.

CARROLL, P. J., September 18, 1961.—These matters are before the court as a result of the identical preliminary objections filed by defendants to plaintiff's complaints in assumpsit. The complaints are substantially similar and the preliminary objections raise identical issues of law. In the first count of plaintiff's complaints, plaintiff avers that on or about June 5, 1952, defendants executed and delivered contracts of health and accident insurance to plaintiff, copies of which are pleaded; that the pertinent provision of the Mutual Benefit policy provides that in the event the insured, because of totally disabling sickness, shall be confined within doors, the company shall pay benefits during the period of such confinement at the rate of $100 per month, if such confinement commences on or after the insured's sixtieth birthday, provided the insured is under professional care and regular attendance of a legally qualified physician, and that such sickness causes continuous total disability and total loss of time. Further, that if the insured shall not be continuously confined indoors but shall be totally and continuously disabled, the insurer will pay benefits at the same rate if such liability commences on or after the insured's sixtieth birthday.

The United Benefit Life Insurance Company's policy provides that in the event the insured suffers a total disabling confining illness, a benefit in the amount of

$200 per month will be paid until the insured's sixtieth birthday and thereafter a benefit in the amount of 50 percent of said monthly benefit, so long as the insured lives and suffers continuous confinement. The policy contains similar provisions as to professional care and total disability and also provides that in the event the disabling sickness is nonconfining, payment will be made at the 50 percent rate for a period of three months. The policies contain a waiver of premium if the disability has continued for a stated period of time.

The complaints further allege that on or about February 19, 1958, plaintiff suffered a sickness which, within the terms of the provisions of the policies, "caused plaintiff to be continuously confined within doors" under the professional and regular attendance of a legally qualified physician; that plaintiff has at all times thereafter been so disabled and so confined; that plaintiff's confinement occurred after his sixtieth birthday; that plaintiff presented proofs of this claim to the defendant companies, and that defendants made payments at the rate provided for a total disabling confining illness in the policies up to and including the period ending May 16, 1959, but since that date neither of defendants have made payments for confining total disability; that plaintiff has complied with all of the conditions of the policies and accordingly makes claim for $1,200 from each of defendants, plus interest for the period from May 17, 1959, to May 16, 1960, the time of the commencement of the action.

The second count of the complaints, after restating by reference the contents of count 1, avers that during the period from May 1959 to January 1960, defendant Mutual Benefit Health and Accident Association sent checks to plaintiff with accompanying letters indicating that payments were being made at the nonconfining illness rate. During this period to the date of the complaint, defendant United Benefit Life In-

surance Company, after making one payment at the nonconfining rate refused to make further payments on its policy. Plaintiff further avers that he is informed that his illness is permanent; that he will be continuously confined within doors and will continue to require professional care; that defendants, nonetheless, have refused to pay him any further sums for confining illness and that he has a "reasonable expectancy of 396 months of life," and accordingly makes demand in the amount of $39,600 representing payments at the rate of $100 per month for such period of this alleged life expectancy.

Defendants have filed four identical preliminary objections together with a prayer for dismissal of the complaints or, in the alternative, the striking off of the second count of each complaint. The first preliminary objection is in effect a demurrer, averring that the complaint fails to state a cause of action. Preliminary objection no. 4 is in the nature of a motion for a more specific pleading, and states that plaintiff in his complaint has failed to plead the nature of his sickness and the specific professional care of a legally qualified physician as a condition precedent to recovery on the policy.

These objections must be dismissed. Standard provision 8, contained in each of the policies, grants the defendant companies the right to periodic examinations of the plaintiff to determine continuing liability for benefits. That provision provides:

"8. The Association shall have the right and opportunity to examine the person of the Insured when and so often as it may reasonably require during the pendency of claim hereunder, and also the right and opportunity to make an autopsy in case of death where it is not forbidden by law."

In view of the alleged payment by defendant companies for a period in excess of one year, it is difficult

to believe that defendants have not exercised their right under the above provision and, accordingly, that they do not now have knowledge of plaintiff's illness and the specific medical and professional care which he has received. More significantly, now that suit has been commenced, all of the avenues provided by the rules of civil procedure pertaining to discovery are available to defendants, including the right to a physical or mental examination as set forth in Pa. R. C. P. 4010. Thus viewed, it is clear that, as to count 1, plaintiff's complaint states a cause of action.

Preliminary objection nos. 2 and 3 are directed to the second count of plaintiff's complaint wherein plaintiff, after alleging total and permanent disability, contends that the rejection of his pending claim constitutes a breach of contract, conferring on him the right to anticipate and to recover in this action monthly disability payments as measured by his life expectancy. With this contention we cannot agree, for it is clear that the mere failure to pay monthly benefits as claimed does not amount to an attack on the validity of the policies or a breach of the contract of insurance in its entirety: Summers v. Prudential Insurance Company of America, 319 Pa. 270 (1935), where the court, at page 273, cogently observed:

"The important question is the extent of the recovery to be allowed. The court below, while apparently recognizing the rule that in an action at law plaintiff can recover only such amounts as are due at the commencement of the action, nevertheless refused to follow that rule and permitted recovery of installments accruing in the interim between that date and the date of trial and of premiums paid between those dates. This was error. In courts of law it has always been held that a plaintiff cannot recover sums not due and owing at the time of suit. It is apparent that plaintiff's rights to the installments accrued from month to month, and

that upon defendant's refusal to pay any one of them when due he could institute suit for that payment. Neither a single default nor a number of defaults would amount to a breach of the entire contract. Each default would only affect the rights and liabilities of the parties with respect to the specific payment involved. Thus it is clear that at the institution of the present suit plaintiff's cause of action comprised only the payments which had already become due; for the payments accruing after that time plaintiff may maintain another suit. The same is true with respect to the payments of premiums made after suit was brought. That the recovery must be so confined is conclusively established by the decided cases: B. & O. Employees' Relief Assn. v. Post, 122 Pa. 579; Robinson v. Exempt Fire Co., 103 Cal. 1; Com. Cas. Ins. Co. v. Campfield, 243 Ill. App. 453; Bonslett v. N. Y. Life Ins. Co., 190 S. W. (Mo.) 870; Cardwell v. Employers' Liab. Assur. Corp., 105 W. Va. 197; see Losnecki v. Mut. Life Ins. Co., 106 Pa. Superior Ct. 259, 265; Rayburn v. Pa. Cas. Co., 141 N. C. 425, 435."

The rationale of the rule that one may recover only sums due and owing at the time of suit is particularly applicable to a suit for periodic payments under an insurance contract for alleged total disability, since it takes cognizance of the fact that the future is always an unknown quantity and that courts should not engage in speculation as to the future contractual status of the parties. Nowhere is this more true than in a determination of contractual obligations based on the future medical condition of a person. With the advances of medical science, an injury or illness of a person which today is deemed to be totally disabling, tomorrow may be curable and no longer disabling.

See also Bree v. Mutual Benefit Health and Accident Association, 182 F. Supp. 181 (1959), where the

court, in passing on the validity of the contention urged by plaintiff herein, observed:

"Were we to take cognizance of the amounts claimed to be due from the date the complaint was filed on December 31, 1957 to the date of this opinion, each of the amounts owed by Mutual and United would be beyond $3,000. And if we were to give recognition to the possible future payments for the period claimed in the complaint, the jurisdictional amount would also be reached as to Metropolitan. But may the monthly benefits under the policies over such periods be considered in computing the amount in controversy? In our opinion they may not be. The question of the validity or the vitality of the policies is not in issue. It is clear that an insurer's mere failure to pay monthly benefits when due does not amount to a breach of the policy in its entirety. Summers v. Prudential Ins. Co. of America, 1935, 319 Pa. 270, 273, 179 A. 78. Only the extent of the obligation of each defendant under the policies is involved here. Under these circumstances potential benefits subsequent to the filing of the complaint may not be taken into consideration in ascertaining the amount in controversy. New York Life Ins. Co. v. Viglas, 1936, 297 U. S. 672, 56 S. Ct. 615, 80 L. Ed. 971; Colorado Life Co. v. Steele, 8 Cir., 1938, 95 F. 2d 535. The fact that a declaratory judgment is sought does not require a different conclusion. Mutual Life Ins. Co. of New York v. Moyle, 4 Cir., 1940, 116 F. 2d 434, Commercial Casualty Ins. Co. v. Fowles, 9 Cir., 1946, 154 F. 2d 884, 165 A. L. R. 1068; Travelers Ins. Co. v. Greenfield, 5 Cir. 1946, 154 F. 2d 950. Also see cases collected in Annotation, 165 A. L. R. 1073, 1076."

In addition, it is to be noted as pointed out supra, that section 8 of the policies grants defendants a continuing right during the "pendency of the claim" to periodic examination of the claimant; further, sections

9 and 10 of the policies * mandate that plaintiff provide periodic proofs of loss for each of the indemnity periods, which under the terms of the policy are monthly. These rights would be effectively destroyed if we were to permit recovery on an anticipatory breach theory as urged by plaintiff.

Accordingly, we have entered the following

### Order

Now, January 9, 1961, preliminary objections nos. 1 and 4 dismissed. Preliminary objections nos. 2 and 3 sustained. Eo die: second count of plaintiff's complaint stricken off.

---

* "Section 9. All indemnities provided in this policy for loss other than that of time on account of disability, will be paid within sixty days, after receipt of due proof.

"Section 10. Upon request of the insured and subject to due proof of loss all of the accrued indemnity for loss of time on account of disability will be paid at the expiration of each month during the continuance of the period for which the Company is liable, and any balance remaining unpaid at the termination of such period will be paid immediately upon receipt of due proof."