**WALLACE CLARK & COMPANY, INC., Plaintiff,**

v.

**ACHESON INDUSTRIES, INC., Defendant.**

**No. 74 Civ. 2812.**

United States District Court, S. D. New York.

Oct. 22, 1976.

---

**22**

Hopgood, Calimafde, Kalil, Blaustein & Lieberman, New York City, for plaintiff; Paul H. Blaustein, New York City, of counsel.

Pennie & Edmonds, New York City, James G. Foley, New York City, of counsel, Harness, Dickey & Pierce, Birmingham, Mich., Michael R. Dinnin, Birmingham, Mich., of counsel, for defendant.

## OPINION

EDWARD WEINFELD, District Judge.

The defendant, Acheson Industries, Inc. ("Acheson"), moves pursuant to Rule 56(b) of the Federal Rules of Civil Procedure that summary judgment be awarded in its favor for (1) past due royalty payments under a licensing agreement whereby plaintiff was licensed to manufacture and sell products under claims of defendant's patent, and (2) future minimum royalty payments due to March 21, 1978, the termination date of the licensing agreement. The aforesaid royalty agreement was entered into simultaneously with the entry of a consent decree wherein Acheson's patent was held both valid and infringed by META–TEF 530, a product manufactured and sold by plaintiff. After making payments for a period of two years and filing quarterly reports with Acheson reflecting sales, the plaintiff refused to make payments due from and after January 1, 1974 and refused to file the required reports; instead, it commenced this action wherein it sought an adjudication of invalidity of the patent underlying the license agreement. This Court held that the consent decree to which plaintiff was a party was res judicata, both on the issue of validity and infringement of the patent, and accordingly granted summary judgment on that claim in favor of Acheson. Familiarity is assumed with the Court's opinion and decision,[1] which was affirmed by the Court of Appeals;[2] certiorari was denied.[3]

In the light of the Court's ruling and since it is acknowledged that plaintiff discontinued making the minimum annual payments due commencing January 1, 1974 at the annual rate of $7500 payable in advance quarterly in each year, defendant clearly is entitled to the unpaid minimum amounts due[4] through the quarter period commencing on October 1, 1976, a total of $22,500, less such payments plaintiff has made during the pendency of this motion.[5] Accordingly, judgment in that sum together with appropriate interest may be entered.

Plaintiff resists the second branch of defendant's motion which seeks judgment for future payments to March 21, 1978, the expiration date of the contract. It contends, contrary to the defendant's position, that the future quarterly minimum payments may not be accelerated even though it has breached the agreement by nonpayment of amounts due to date. The agreement contains no clause accelerating payments in the event of a default on payment of any quarterly amount. It does, however, provide that if plaintiff Wallace Clark, the licensee, fails "to comply with the terms of reports and royalty payments specified herein and so often as the same shall happen, or breaches any other material provisions of this agreement" Acheson, at its option, by giving sixty days' written notice, may terminate the agreement with the right to Wallace Clark to correct the breach within thirty days, in which event the agreement continues in full force and effect. Despite the breaches by Wallace

1. *Wallace Clark & Co. v. Acheson Industries, Inc.,* 394 F.Supp. 393 (S.D.N.Y.1975).

2. 532 F.2d 846 (2d Cir. 1976).

3. 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976).

4. Defendant limits its claim to the minimum payments due under the agreement.

5. The Court has been advised that plaintiff has remitted to defendant $7500 during the pendency of the motion.

Clark, which entitle Acheson to a judgment for arrears, to date Acheson has failed to give notice of termination of the agreement. Thus it continues in full force and effect and Wallace Clark, the plaintiff, remains under an obligation for the minimum payments due quarter annually to the termination date. Now that plaintiff's second attempt to have the patent declared invalid has failed and it is obligated to make the payments under the licensing agreement, there is no reason to assume that it will not meet its obligations. In such circumstances, there is no basis for acceleration of the future payments.[6]

█ Finally, the defendant moves for an award of attorneys' fees for services rendered in this case pursuant to 35 U.S.C., section 285, which provides that "the court in exceptional cases may award reasonable attorney[s'] fees to the prevailing party." The standard is an exacting one, for "only where the court is convinced that the . . suit is so wholly devoid of substance that plaintiff could not have had a bona fide belief in its validity shall it award . . .

fees."[7] The defendant contends that plaintiff's entry into the consent decree establishing both validity of the patent and infringement by plaintiff and its subsequent attack in this action upon the validity of the decree and the licensing agreement establishes plaintiff's bad faith. However, as this Court noted in its prior opinion:

> Wallace Clark's present attempt to disavow its commitment under the decree rests upon the rationale that if it, as a licensee, is now foreclosed from challenging the validity of the patent, the public would be forced to pay tribute to an unwarranted monopoly grant. Accordingly, plaintiff presses that the public interest as explicated in *Lear* [*Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969)] is so predominant that its own prior conduct in voluntarily entering into the consent decree is irrelevant and that it should not be estopped from challenging the validity of the plaintiff's patent . . . .[8]

While this Court rejected the role essayed by plaintiff as the defender of the public

---

**6.** Acheson argues that Wallace Clark's breach to date by nonpayment of royalties, coupled with its resistance to making future payments, constitutes a "total breach" of their agreement, thus entitling Acheson to acceleration of future payments due to the termination date. These would constitute present breaches with consequences in the future, and, strictly speaking, the doctrine of anticipatory repudiation would not apply. *See New York Life Ins. Co. v. Viglas*, 297 U.S. 672, 681–82, 56 S.Ct. 615, 80 L.Ed. 971 (1936). Nevertheless, Wallace Clark's acts reflecting resistance to payment of its future obligations may be analogized to an anticipatory breach of a promise to make installment payments of money on future dates. When one party to the contract has fully performed, as has Acheson by granting the patent license, the anticipatory breach by the other party of such an obligation will not justify acceleration of future payments. *See New York Ins. Co. v. Viglas*, 297 U.S. 672, 680–81, 56 S.Ct. 615, 80 L.Ed. 971 (1936); *Roehm v. Horst*, 178 U.S. 1, 17–18, 20 S.Ct. 780, 44 L.Ed. 953 (1900); *Quick v. American Steel & Pump Corp.*, 397 F.2d 561, 564 (2d Cir. 1968); *John Hancock Mut. Life Ins. Co. v. Cohen*, 254 F.2d 417, 424–26 (9th Cir. 1958); *Bird v. Computer Technology, Inc.*, 364 F.Supp. 1336, 1345 (S.D.N.Y.1973); *McCready v. Lindenborn*, 172 N.Y. 400, 408, 65 N.E. 208 (1902); *Sholom & Zuckerbrot Queens Leasing Corp. v. Forate Realty*

*Corp.*, 29 A.D.2d 571, 286 N.Y.S.2d 364, 366 (2d Dept. 1967); *Medaris v. Lionel Corp.*, 25 A.D.2d 735, 268 N.Y.S.2d 936 (1st Dept. 1966); Restatement (Second) of Contracts § 277 (Tent. Draft 9, 1974). Moreover, as noted in the text of this opinion, the parties' own agreement concerning possible breaches by Wallace Clark of its obligations to make periodic royalty payments manifests the parties' intention that the licensing agreement was not an entire and indivisible contract so that failures by Wallace Clark to pay quarterly royalties would justify recovery of total damages. *See Bird v. Computer Technology, Inc.*, 364 F.Supp. 1336, 1340 (S.D.N.Y.1973); *Rudman v. Cowles Communications, Inc.*, 30 N.Y.2d 1, 13, 330 N.Y.S.2d 33, 42, 280 N.E.2d 867 (1972); 6 Williston, Contracts § 863 (3d Ed. 1962); Restatement (Second) of Contracts § 368(3)(4) (Tent. Draft 8, 1973).

**7.** *Indiana General Corp. v. Krystinel Corp.*, 297 F.Supp. 427, 449 (S.D.N.Y.1969), aff'd, 421 F.2d 1023 (2d Cir.), cert. denied, 398 U.S. 928, 90 S.Ct. 1820, 26 L.Ed.2d 91 (1970). *See also Kahn v. Dynamics Corp.*, 508 F.2d 939 (2d Cir.), cert. denied, 421 U.S. 930, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975) ("bad faith" standard).

**8.** 394 F.Supp. at 398.

interest, plaintiff acted upon the advice of counsel, and it cannot be said there was not a basis for such advice. Indeed, there was affirmative support for the attempt to deny res judicata effect to the consent decree. In the instance of the very decree here at issue, a Michigan court upheld plaintiff's position.[9] Further, although up to the time of this Court's ruling there was no definitive decision on the issue, authorities gave plausible support to plaintiff's contention.[10] Under the circumstances plaintiff cannot be charged with bad faith or a lack of bona fide belief in its asserted claim attacking the validity of a decree to which it consented.[11]

The motion for allowance of counsel fees is denied. Judgment may be entered accordingly.

---

9. *See id.* at 395 n. 2.

10. *Kraly v. National Distillers & Chem. Corp.,* 502 F.2d 1366 (7th Cir. 1974); *USM Corp. v. Standard Pressed Steel Co.,* 184 U.S.P.Q. 476 (N.D.Ill.1974).

11. With the law not established it would be quite another matter if under similar circumstances such a challenge were made.